[Crim. No. 21965. Dec. 17, 1981.]

In re WILLIAM WILSON on Habeas Corpus.

**COUNSEL**

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Karl S. Mayer, Kenneth C. Young, William D. Stein and J. Patrick Collins, Deputy Attorneys General, for Appellant.

William Everett Glass for Petitioner.

Opinion

**RICHARDSON, J.**—The People appeal from a trial court judgment discharging William Wilson from custody following the issuance of a writ of habeas corpus. The issue concerns the computation of the correct parole period when there have been successive paroles, the first under the Indeterminate Sentence Law (ISL) and the second under the determinate sentencing law (DSL). Wilson argues that he is being illegally restrained in constructive custody as a parolee contrary to the terms of Penal Code section 3000, subdivision (d). (All further statutory references will be to this code.) He contends that under its provisions his parole term expired on October 22, 1979. We will conclude that he was not unlawfully restrained and that the trial court erred in discharging him.

Convicted of murder in the first degree (§ 187) on December 16, 1960, Wilson was committed to the California Department of Corrections for a life term. On October 22, 1975, he was initially paroled. Shortly thereafter his parole was revoked, and on August 5, 1976, he was returned to state prison. On July 1, 1977, while Wilson remained in prison, the DSL became operative. On December 22, 1977, he was again paroled. He was rearrested on November 18, 1979, and a parole revocation hearing was scheduled. Wilson then filed a petition for writ of habeas corpus in the Contra Costa County Superior Court arguing that pursuant to the then applicable section 3000, subdivision (d), permitting a maximum aggregate four-year parole and custody period for specified felons, his parole period expired on October 22, 1979. The crux of the case is his contention that the computation of the statutory parole period began on his release under his original parole in 1975.

Wilson was sentenced to a life term prior to the enactment of the DSL. Under then applicable law, the Adult Authority was empowered to release a prisoner sentenced to an express life term on parole. However, the prisoner remained under the control of the authority for the remainder of his life, unless his sentence was commuted or he was granted a pardon. (See *People* v. *Walker* (1976) 18 Cal.3d 232, 243 [133 Cal. Rptr. 520, 555 P.2d 306].)

When the DSL was enacted in 1976, the Legislature provided for fixed limited periods of parole to be made a part of sentences thereafter imposed. Section 3000, subdivision (b), mandated that "In the case of

any inmate sentenced under Section 1168, the period of parole shall not exceed three years in the case of an inmate imprisoned under a life sentence ..." and subdivision (d) added that "in no case may a prisoner sentenced pursuant to subdivision (b) of Section 1168 be retained under parole supervision or in custody for a period longer than four years from the date of his initial parole." (In 1978 these respective time periods were increased to five years and seven years.) The DSL applies to Wilson (§ 1170.2, subd. (f)). Because petitioner was on parole prior to the effective date of the amendments to section 3000 extending the possible length of applicable parole terms, his maximum parole period is four years. (*In re Thomson* (1980) 104 Cal.App.3d 950 [164 Cal. Rptr. 99]; *In re Harper* (1979) 96 Cal.App.3d 138 [157 Cal.Rptr. 759].)

■ When does the parole period begin? Wilson argues that the period must include the time previously spent on parole under the prior law, and that as a result he was entitled to discharge from all custody on October 22, 1979, four years after his "initial parole" release. Our reading of the statute and consideration of the effect of his interpretation persuade us otherwise.

Section 3000, subdivision (d), as it was originally enacted, read in pertinent part: "The date of the maximum statutory period of parole under this subdivision and subdivisions (a) and (b) shall be computed *from the date of initial parole*, and shall be a period chronologically determined, without interruption, whether or not parole has been revoked and the inmate has been sentenced under Section 3057." (Stats. 1976, ch. 1139, § 278, p. 5150.) Before the operative date of the statute, July 1, 1977, however, the Legislature clarified the point by amending section 3000 in two significant ways. First, it added the following introductory language to the section: "The Legislature finds and declares that *the period immediate[ly] following incarceration is critical to successful reintegration of the offender* into society and to positive citizenship. It is in the interest of public safety for the state to provide for the supervision of and surveillance of parolees and to provide educational, vocational, family and personal counseling necessary to assist parolees in the transition between imprisonment and discharge. A sentence pursuant to Section 1168 or 1170 *shall include a period of parole*, unless waived, as provided in this section." (§ 3000, as amended by Stats. 1977, ch. 165, § 42, pp. 664-665, italics added.) The Legislature thereby emphasized the importance of a parole period following imprison-

ment, and further stressed a basic change in its approach to parole under the new law. Parole formerly was considered a part of the term served in confinement. Under the present scheme, however, the parole period is imposed *separately* from the term of imprisonment. Thus, section 3000, subdivision (a), now provides "*At the expiration of a term of imprisonment* ... the inmate *shall be released on parole* for a period not exceeding three years, ..."

Moreover, section 3000, subdivision (d), was also amended before the operative date of the DSL to read as follows: "The date of the maximum statutory period of parole under this subdivision and subdivisions (a) and (b) shall be computed from the date of initial parole, *or July 1, 1977, whichever is later*, and shall be a period chronologically determined." (Stats. 1977, ch. 165, § 42, p. 665.) The Legislature thereby explicitly provided that the relevant date for computing a parole term under the new sentencing act was the parole release date following the operative date of the new act. (See *Selected 1977 California Legislation* (1978) 9 Pacific L.J. 469, 474 ["Prior to the enactment of Chapter 165, the maximum period of parole under the 1976 Act was computed from the date of the initial granting of parole, which would have resulted in the release of a prisoner who had served the maximum parole period on or before July 1, 1977 ...."].)

Our conclusion that the parole period limitations described in section 3000 apply to post-July 1, 1977, parole periods only is reinforced by a consideration of the effect of the contrary construction urged by Wilson. Any prisoner sentenced under the ISL and released on parole at any time prior to enactment of the DSL could argue that he is entitled to immediate release if, prior to July 1, 1977, he had been free on parole for four years. If such were the case, these prisoners, who frequently are the most serious offenders, would not be subject to any parole supervision upon their release despite the Legislature's express provision for such supervision. (Cf., *In re Grey* (1974) 11 Cal.3d 554 [114 Cal.Rptr. 104, 522 P.2d 664].)

We are convinced that the better construction, which accords with both the express terms of the statute and the stated legislative intent, makes the time periods specified in section 3000 applicable only to post-July 1, 1977, parole releases. So construed, the significant parole date for Wilson was December 22, 1977, the date upon which he was initially released on parole following the operative date of the DSL.

The order appealed from is reversed and the trial court is directed to deny the petition.

Bird, C. J., Tobriner, J., Mosk, J., Newman, J., Kaus, J., and Broussard, J., concurred.