[Crim. No. 6680. Fifth Dist. May 30, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
OTIS BRITTON, Defendant and Appellant.

COUNSEL

Quin Denvir and Frank O. Bell, Jr., State Public Defenders, under appointment by the Court of Appeal, and Lisa Short, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eddie T. Keller and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ANDREEN, J.—This appeal follows a conviction upon a plea of guilty to the charge of felon in possession of a firearm. (Pen. Code, § 12021.) Defendant seeks review of the denial of his Penal Code[1] section 1538.5 motion. We affirm.

## I. FACTS

Acting on a recent complaint of a citizen that defendant (who was on parole with a search condition) had pointed a gun at him, defendant's parole

---

[1]All statutory references are to the Penal Code.

agent, Connie Cardoza, other parole agents and police searched the apartment that defendant shared with his girl friend (who was not on parole). There was no evidence as to how the police and parole officers gained entry to the apartment.

Cardoza searched a closet which contained male and female clothing. On a shelf behind other articles was a bag. She opened it and found a pistol. Cardoza did not inquire as to the ownership of the bag before opening it because defendant, who had been present at the time of the beginning of the search, had by then been transported to jail and the girl friend was not present during any part of the search.

## II. Procedure

Pursuant to stipulation, the section 1538.5 motion was submitted on the preliminary hearing transcript, the memorandum of points and authorities and oral arguments of counsel. The motion to suppress did not discuss or raise the issue of how the officers and parole agents entered the apartment. The legal points raised were that the search was without a warrant, and there was a 50-50 chance that the bag belonged to the girl friend.

The district attorney's opposition met the issue of whether the officers had a right to search portions occupied by defendant and to which he had access.

There was no mention of any knock-notice problem in the motion, the opposition, or during oral argument. However, at the preliminary hearing defense counsel did state: "I would object to the admission . . . [of the pistol] on the grounds that the search we have here was illegal; first on the grounds that there was no evidence presented that the officers complied with knock notice when they entered the house."

## III. Issues

On appeal, the defendant contends that a parole search may not be conducted without a search warrant; that the prosecution failed to show compliance with the knock-notice requirement; and that the warrantless search of the opaque, closed paper bag was not justified.

## IV. Parole Search Without Search Warrant

Defendant contends that the three theories used in the past to justify warrantless parole searches are no longer valid. They are (1) constructive custody, (2) consent, and (3) administrative needs of the parole/probation process. We first address the doctrine of constructive custody.

Britton's theory that the doctrine of constructive custody to justify warrantless searches is no longer viable relies on (1) a perceived indication of disapproval of the doctrine in *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734], (2) the rare mention of the theory in recent cases and (3) the enactment of the Determinate Sentencing Act.

The portion of the *Martinez* opinion which Britton contends indicates a disapproval of "constructive custody" as a reason to justify warrantless searches is: "Although past cases have sometimes declared that a parolee is in 'constructive custody' or 'without liberty,' '[f]ictions of "custody" and the like . . . cannot change the reality of a parolee's conditional freedom and cannot affect the constitutional protections surrounding his interest in that conditional freedom.' (*Rose* v. *Haskins* (6th Cir. 1968) 388 F.2d 91, 98, fn. 2 (Celebrezze, J., dissenting).)" (*Id.*, at p. 646.)

In *Martinez,* although defendant was a parolee, the police did not know of his parole status at the time of the warrantless search. Also, the search was a part of an investigation into suspected criminal activity, not parole violations. A conviction based upon that search was reversed by the Court of Appeal, but Martinez remained in prison because of a parole revocation based on the same facts, and he sought a writ of habeas corpus. Our high court held that the police could not justify their actions upon the defendant's parole status, because they were unaware of it. It is in this context that the above statement was made. That it was not a complete disapproval of the use of "constructive custody" as justification for parole searches is supported by the court's statement in *People* v. *Mason* (1971) 5 Cal.3d 759, 764-765 [97 Cal.Rptr. 302, 488 P.2d 630]: "Defendant contends that a probation condition which requires submission to a warrantless search constitutes an unreasonable invasion of his Fourth Amendment rights. We have heretofore suggested, however, that persons conditionally released to society, such as parolees, may have a reduced expectation of privacy, thereby rendering certain intrusions by government authorities 'reasonable' which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands. (See *In re Martinez,* 1 Cal.3d 641, 647, fn. 6 . . .; cf. *People* v. *Gilkey,* 6 Cal.App.3d 183, 186-188 . . ., and cases cited.)"

Britton further contends that with the enactment of the Determinate Sentencing Act, defendant no longer "serves time" outside prison. This is because the Department of Corrections does not have a statutory option to refuse to grant parole and the defendant does not have an option to refuse parole.

Section 3000 provides in part: "(a) At the expiration of a term of imprisonment of one year and one day, or a term of imprisonment imposed pur-

suant to Section 1170, or at the expiration of such term as reduced pursuant to Section 2931, if applicable, the inmate shall be released on parole for a period not exceeding three years, unless the board for good cause waives parole and *discharges the inmate from custody* of the department.

". . . . . . . . . . . . . . . . . . . . . .

"(d) Upon successful completion of parole, or at the end of the maximum statutory period of parole specified for the inmate under subdivision (a) or (b), as the case may be, whichever is earlier, the inmate shall be *discharged from custody. . . .*" (Italics added.)

The California Supreme Court in *In re Wilson* (1981) 30 Cal.3d 438, 442 [179 Cal.Rptr. 207, 637 P.2d 674], discussed the approach to parole under the Determinate Sentencing Act. "The Legislature . . . emphasized the importance of a parole period following imprisonment, and further stressed a basic change in its approach to parole under the new law. Parole formerly was considered a part of the term served in confinement. Under the present scheme, however, the parole period is imposed *separately* from the term of imprisonment." (*Id.*, at pp. 441-442.)

In *In re Caudillo* (1980) 26 Cal.3d 623, 636 [164 Cal.Rptr. 692, 610 P.2d 1021], the court stated: "The provisions of the DSL relating to the release and discharge of a prisoner differ from those of former section 2940. Whereas section 2940 provided that a prisoner '*shall be discharged from custody* upon the completion of [the] term' fixed by the Adult Authority . . ., section 3000 of the Penal Code presently provides only that at the expiration of the term established under the DSL an inmate 'shall be released on parole.' (§ 3000, subd. (a).) Under the present statute, an inmate is *not 'discharged from custody'* until 'his successful completion of parole. . . .' (§ 3000, subd. (d).) Thus, in the instant case, even under the sentence as administratively recomputed by the Department of Corrections, Caudillo—unlike the prisoner in *Haygood*—was still lawfully '*in custody*' since he had not completed his period of parole." (Second and final italics added.)

Section 3056 states: "Prisoners on parole shall remain under the legal custody of the department and shall be subject at any time to be taken back within the inclosure of the prison."

Thus, under the Determinate Sentencing Act a parolee is in "custody" until his parole period expires.

By enacting the Determinate Sentencing Act and making parole mandatory in almost all cases, the Legislature was not rejecting the theory of

"constructive custody" but was, in essence, finding that parole is a necessity, a "separate" term to be served after the initial term of imprisonment has been completed and to be "served" under the supervision of the Department of Corrections. Such supervision may include imposing warrantless search conditions upon a parolee when necessary.

 Irrespective of the viability of the constructive custody doctrine, another theory justifying warrantless parole searches—administrative needs of the parole process—retains its validity. The defendant argues that under the determinate sentencing law the parole function is no longer rehabilitative in nature; that, therefore, the administrative need for access and a close relationship between the parolee and his parole agent no longer is necessary; and that, therefore, the parolee under the determinate sentencing law is entitled to more Fourth Amendment protection. The answer is that Statutes of 1976, chapter 1139, which enacted the determinate sentencing scheme, included section 3000, which provides in part: "The Legislature finds and declares that the period immediately following incarceration is critical to successful reintegration of the offender into society and to positive citizenship. It is in the interest of public safety for the state to provide for the supervision of and surveillance of parolees and to provide educational, vocational, family and personal counseling necessary to assist parolees in the transition between imprisonment and discharge. A sentence pursuant to Section 1168 or 1170 shall include a period of parole, unless waived, as provided in this section. . . ." It is thus seen that although "[t]he Legislature finds and declares that the purposes of imprisonment for crime is punishment" (§ 1170, subd. (a)(1)), it also declared that the purpose of parole is rehabilitative.

There is therefore no justification for an inference of a legislative modification of the salutary rule that parolees have a reduced expectation of privacy, and are subject to searches which otherwise would be invalid under traditional Fourth Amendment concepts when such searches are necessitated by legitimate governmental demands. (*People* v. *Mason, supra,* 5 Cal.3d at pp. 764-765.)

Defendant contends that under *Camara* v. *Municipal Court* (1967) 387 U.S. 523 [18 L.Ed.2d 430, 87 S.Ct. 172] the parole officers in this case were required to get a search warrant. The court in *Camara* held that the Fourth Amendment bars prosecution of a person who has refused to permit a warrantless code-enforcement inspection of his personal residence. The question of whether the authority to search should be evidenced by a warrant depends in part "upon whether the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search." (*Id.,* at p. 533 [18 L.Ed.2d at p. 938].) The frustration of the purpose of requiring public

health inspectors to obtain warrants before searching private residences does not come close to the frustration of purpose which would occur if, when performing their duties, parole officers were required to obtain search warrants before searching a parolee's residence. The legitimate demands of the parole process (discovery of parole violations, supervision of the parolee, checking the parolee's progress toward rehabilitation and protection of the public) can best be met by allowing a parole officer to conduct a reasonable parole search without the need of obtaining a warrant.

■ Searches by parole officers are subject to the broad reasonableness requirement of the Fourth Amendment, but reasonableness is not determined by the traditional level of "probable cause." (*In re Martinez, supra,* 1 Cal.3d at p. 647, fn. 6; *People* v. *Mason, supra,* 5 Cal.3d at pp. 764-765.) The search in the instant case was a reasonable one justified by the legitimate demands of the parole process. A citizen had complained that a parolee pointed a gun at him and that the parolee's apartment was near the scene of the confrontation. Such an occurrence demands a search of the parolee's apartment.

We acknowledge a strong bias in the law against governmental physical entry into one's home. (*Payton* v. *New York* (1980) 445 U.S. 573 [63 L.Ed.2d 639, 100 S.Ct. 1371]; *People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333].) ■ Although freedom from intrusion into the home is the archetype of the privacy protection afforded by the Fourth Amendment, it must be qualified in respect to those who have committed crimes and are in that transitional status between physical incarceration and complete freedom which we call parole.

■ We confirm the full validity of the traditional concept of a reduced expectation of privacy of parolees, primarily on the doctrine of the administrative needs of the parole process. (*People* v. *Mason, supra,* 5 Cal.3d 759, 765.)[2] ■ That reduced expectation of privacy justified the intrusion into defendant's apartment.

## V. Knock-notice Requirement

As noted earlier, the prosecution did not present any evidence that would indicate that the parole and police officers complied with knock-notice requirements. The testimony regarding the search covered what transpired once they were inside Britton's apartment.

---

[2]Since these needs sufficiently justify the warrantless parole search in this case, we decline to decide if the consent theory is still viable.

■ Britton contends that the prosecution's failure to show compliance with knock-notice or adequate justification for noncompliance results in an illegal search and therefore the evidence seized in Britton's apartment must be suppressed.

The fact that a search is being conducted pursuant to a parole search condition does not excuse compliance with statutory knock-notice requirements. (*People* v. *LaJocies* (1981) 119 Cal.App.3d 947, 952 [174 Cal.Rptr. 100].) An officer conducting a parole search is in a similar position to an officer conducting a search under section 1531 (knock-notice requirements when executing a search warrant). Knock-notice requirements must be complied with in both situations unless excused under an exception to the general rule. (*People* v. *Ford* (1975) 54 Cal.App.3d 149, 154-155 [126 Cal.Rptr. 396].)

The prosecution contends that defendant waived the knock-notice issue since it was not raised at the section 1538.5 hearing. Instead, it is urged, he silently "sandbagged" the prosecution. The Attorney General relies on general language in *People* v. *Lilienthal* (1978) 22 Cal.3d 891, 896 [150 Cal.Rptr. 910, 587 P.2d 706]: "We agree that it [§ 1538.5] should be interpreted to require that the matter be raised in the superior court to preserve the point for review on appeal." (The actual holding in *Lilienthal* was that the § 1538.5 issue was raised through a § 995 motion.)

Defendant relies on two cases out of this court.

In *Wilder* v. *Superior Court* (1979) 92 Cal.App.3d 90 [154 Cal.Rptr. 494], an officer arrested the defendant in Delano. Although his vehicle, a van, was then in a garage, the officer informed him that unless he drove his van to Visalia, it would be impounded. It was so driven and parked at the police department. The officer then contacted several crime victims who came and located stolen items on the exterior of the van. These victims were unknown to the officer at the time of the seizure of the van in Delano.

The matter came to this court on a writ of mandate following a denial of defendant's motion to suppress. At the hearing on the motion, the prosecutor contended that the items were in plain view. Observing that a plain view seizure must be reasonable, and that at the time of the seizure there was no showing that the policeman had probable cause to believe that the items on the van were stolen, we issued a peremptory writ of mandate directing the lower court to grant the motion to suppress. In doing so, we remarked that the appropriate procedure is for the defendant to file his motion to suppress, showing that the seizure was without a warrant. It is unnecessary for him to particularize why the seizure was unlawful. Then the

prosecutor should, by his opposition to the motion, plead his justification based upon facts he expects to prove at the suppression hearing. The defendant may then file a written response to the attempted justification.

*Wilder* was followed by *People* v. *Sedillo* (1982) 135 Cal.App.3d 616 [185 Cal.Rptr. 475]. Sedillo and his codefendants were convicted of receiving stolen property (§ 496) following a denial of their section 1538.5 motion to suppress evidence. An officer had been called to investigate an assault with a deadly weapon. He was told that Sedillo had assaulted another with a knife. He was seen running. Failing to abide a command to stop, Sedillo ran into a house. The officer followed. Although unable to locate Sedillo, he found many Sears appliances in their original cartons. These were seized without a warrant.

We held that since the police did not have a specific basis to believe that the merchandise was there as a result of criminal activity, it could not be seized under the plain view doctrine.

For our purposes, the significant part of the opinion is that which discusses whether the defendants' contention was cognizable. They moved to suppress specifically described property and relied on the general rule that the prosecution was required to justify a warrantless seizure. (*People* v. *Sedillo, supra,* 135 Cal.App.3d at p. 619.) Although the prosecution justified the initial entry (hot pursuit), it did not justify the ultimate seizure. We held that the defense was not required to put the prosecution on notice as to its failure of proof. The rule is the same as affecting trial evidence. The defendant may challenge the sufficiency of evidence on appeal even though he did not inform the prosecution of the specific proof defect. The same rule applies to the motion for a judgment of acquittal. (§ 1118.1.) Just as the defense is not required to flag failures of proof, neither is it required to object to a defectively pleaded or proven justification for a warrantless search. (*Sedillo, supra,* at p. 623.)

Our task is to determine whether *Sedillo* governs here. There is one obvious difference. In *Sedillo,* the motion to suppress and the evidence focused on the constitutionality of the seizure. The entry into the premises was acknowledgedly valid. The difficulty lay in the fact that it was a warrantless search, the defense had raised that issue and it was then incumbent upon the prosecution to prove justification.

Even if officers have a valid search warrant, they must nevertheless comply with knock-notice requirements. If they fail to do so, the evidence gained must be suppressed. (§ 1531; *Jeter* v. *Superior Court* (1983) 138 Cal.App.3d 934 [188 Cal.Rptr. 351].) Thus, the method of entry exists as

an issue separate and apart from the issue of reasonableness of a search without a search warrant. Since this is so, it follows that the issue of entry is not raised by the pleading of a lack of search warrant.

■ We hold that if a defendant wishes to raise the issue of the lawfulness of the entry, as distinguished from whether a warrantless search was justified, he must raise it in some appropriate way below. Otherwise, the issue is waived.[3]

Another point of distinction between *Sedillo* and the instant case is that in *Sedillo* the defendants not only asserted that the items were seized without a warrant, but also relied expressly on the rule the prosecution bears the burden of justification, citing *Wilder*. In the instant case, the most that defendant's counsel stated was: "Defendant contends that the search of the paper bag was illegal, being without a search warrant, or an exception to the general rule requiring a search warrant." He followed this statement by invoking *People* v. *Montoya* (1981) 114 Cal.App.3d 556 [170 Cal.Rptr. 624], for the proposition that where there is but a 50-50 chance that the object to be searched belongs to the defendant, the officers were under a duty to inquire as to ownership before searching it. The procedure used in *Wilder* was much fairer to the trial judge who was fully advised, in the words of Wilder, that "[t]he trap has been laid."

We should recognize practicalities. Alert defense counsel saw the knock-notice issue at the preliminary hearing stage. By time of entering his plea he had had full opportunity to investigate its viability as a defensive weapon. It is beyond doubt that after invoking pretrial discovery he learned that the defense must fail.

## VI. NEXUS BETWEEN PAPER BAG AND BRITTON

■ Britton contends that the searching officer had an affirmative duty to ascertain the ownership of the paper bag before it was searched and that failure to do so rendered the evidence seized therefrom inadmissible.[4] Britton places reliance on two cases from this court to support his position.

In *People* v. *Montoya, supra,* 114 Cal.App.3d 556, 558, parole agents went to the home of Elaina Fierro, a parolee subject to standard search conditions, to conduct a search. There were three women in the house: Fierro, Montoya (appellant), and Montiel. The women were all dressed in their nightclothes and it appeared that someone had been sleeping on the

---

[3]We acknowledge that in *People* v. *Sedillo, supra,* 135 Cal.App.3d at page 623 the panel stated: "Ultimately, the justification had to cover both the *initial entry* into the house and the seizure, once inside, of the subject property." (Italics added.) This statement is dicta.

[4]Britton also asserts that once discovered, the bag could not be opened. "The bag represents the final zone of privacy at issue in this case. Each layer of invasion into a new zone of privacy must be independently justified." This contention is answered by *United States* v. *Ross* (1982) 456 U.S. 798 [72 L.Ed.2d 572, 102 S.Ct. 2157].

couch in the living room. One of the agents knew that Montiel was also a parolee subject to warrantless search conditions. The agent searched Montiel and then searched a pair of cutoff jeans located near the couch in the living room. The officer subjectively believed that the pants did not belong to Fierro but that they either belonged to Montiel or Montoya. The officer found contraband in the cutoffs. Montoya spontaneously remarked that the pants were hers. (*Id.*, at pp. 559-560.)

The court held that the evidence should be suppressed. "Clearly, when there was but a 50-50 chance that the jeans and contraband belonged to appellant [Montoya], Agent Heberle was under a duty to inquire as to who owned the jeans before searching them. . . . Agent Heberle could have avoided an unwarranted intrusion into an article of clothing belonging to appellant (a transient guest) by asking her if the cutoffs belonged to her, or by asking Montiel if they belonged to her. Such a simple questioning procedure would have protected appellant's expectation of privacy as it related to her jeans." (*Id.*, at pp. 562-563.)

In *Montoya* the officer did not believe that the item (cutoffs) searched belonged to the parolee resident, although he had a belief (50-50 chance) that they might belong to a parolee nonresident. Also, the officers went to the residence to search for things belonging to Fierro (the resident parolee). Most importantly there was someone in the house other than the parolee whom the officers could question about the ownership of the items searched.

In the instant case the officers believed that the bag belonged to either Britton or his girl friend, both residents of the apartment searched. There was no question that the residence searched was Britton's, the area searched was under his and his girl friend's joint control, the paper bag did not have any "identifiable" characteristics and a nonparolee was not present to question about the ownership of the bag. █ Britton suggests that he should have been detained in order to question him about the ownership of the bag. An officer could hardly expect that a parolee would claim ownership of an item which he knew contained contraband. To require the officer to get the parolee's "consent" to search an item even though the parolee is subject to a warrantless search condition would render the search condition useless.

█ In *People* v. *Palmquist* (1981) 123 Cal.App.3d 1 [176 Cal.Rptr. 173] the court found that the *Montoya* reasoning was less than persuasive. "First, the court apparently ignores statements in the record by the parole agent which would support a finding that he subjectively and objectively believed the parolee and nonparolee exercised joint control over the jeans, at least at the time they were discovered. Second, the court erroneously applied the standard of probable cause (applicable to warrantless searches) to reach its holding that searching parole officers must have *probable cause* to believe the item to be searched belongs to the parolee. (See fn. 4, *ante;*

'reasonable cause' in our view is the proper standard for probationer or parolee alike.)" (*Id.*, at pp. 12-13.)

The facts in *Palmquist* are similar to the facts in the instant case. Palmquist was subject to a probation search condition. Mr. Palmquist and Ms. Barjkovich apparently shared a residence. Officers went to this residence, searched, and found contraband in the refrigerator and in a ski parka in the kitchen. (The ski parka was not "distinctly female.") Ms. Barjkovich was not present during the search but arrived shortly thereafter. The appellate court held that there was sufficient evidence to support the finding that the refrigerator and jacket were jointly possessed and therefore the search was permissible.

Another case which is factually similar to the instant case is *People* v. *LaJocies, supra,* 119 Cal.App.3d 947. Officers went to the home of Ron, a parolee, to conduct a search pursuant to his parole conditions. His wife, Sharon, was at home. The officers searched and found contraband. The court upheld the search because the "search was made pursuant to a parole condition, and so Sharon's consent, as a joint occupier of the residence, was unnecessary. [Citations.] The officers clearly had a right to search those portions of the house occupied by Ron and to which he had access. [Citations.]" (*Id.*, at p. 955.)

The *Palmquist* and *LaJocies* cases are on point. Britton and Douglas shared joint ownership of the apartment. The closet which was searched was an area of joint control. The brown paper bag was not "distinctly" male or female.

In the second case relied on by defendant, *People* v. *Tidalgo* (1981) 123 Cal.App.3d 301 [176 Cal.Rptr. 463], probationer Tidalgo was subject to a search condition which permitted his person, residence, auto or possessions to be inspected or searched. Officers went to a residence where Tidalgo was present and searched it. The lower court held that the search was illegal because the officers did not have reasonable cause to believe that the residence was Tidalgo's.

Our court noted the two lines of thought that had developed regarding the proper scope of a parole/probation search condition.

"Recent case law has suggested that probationary search conditions should be literally construed in order to protect the rights of both probationers/parolees and nonprobationers/nonparolees who associate with the individual subject to the particular search condition. For example, several precedents have invalidated probationary/parole searches where the police had insufficient reason for believing that a particular item belonged to probationers/parolees rather than some guest or innocent third party. (See, e.g.,

*People* v. *Cruz* (1964) 61 Cal.2d 861, 866-867 . . .; *People* v. *Montoya* (1981) 114 Cal.App.3d 556, 562-563 . . .; *People* v. *Veronica* (1980) 107 Cal.App.3d 906, 909 . . .; *People* v. *Alders* (1978) 87 Cal.App.3d 313, 317-318 . . . .) These cases are in contrast to decisions where such searches have been validated because officers had searched areas occupied by or items used by both the probationer/parolee and a companion, cotenant or closely related third party. (See, e.g., *People* v. *Johnson* (1980) 105 Cal.App.3d 884, 888 . . .; *People* v. *Icenogle* (1977) 71 Cal.App.3d 576, 586-587 . . .; *Russi* v. *Superior Court* (1973) 33 Cal.App.3d 160, 170 . . . .)" (*Tidalgo, supra,* at p. 306.)

We then stated the rule we were going to follow: "[W]here police officers do not know who owns or possesses a residence or item and such information can be easily ascertained, it is incumbent upon them to attempt to ascertain ownership in order to protect the privacy interest of both probationer and nonprobationer. [Citations.] If it is objectively unreasonable for officers to believe that the residence or item falls within the scope of a search condition, any evidence seized will be deemed the product of a warrantless search absent other considerations. [Citation.] Whether the officer's belief is objectively reasonable would usually be a factual question to be resolved by the court hearing the suppression motion. [Citation.]" (*Id.,* at pp. 306-307, fns. omitted.)

We concluded that even though the proof was susceptible of different interpretations, it supported the suppression court's conclusion that it was unreasonable for the officers to believe that the residence was owned or occupied by Tidalgo. We were thus bound by the factual resolution of the lower court and would not disturb its ruling. (*Id.,* at p. 308.)

*Tidalgo* is distinguishable from the instant case. In *Tidalgo* the officers had not ascertained that the residence was the parolee's before the search. In the instant case the officers knew that the apartment was Britton's residence and had a reasonable belief that the closet was under the joint control of Britton and his girl friend.

## VII. CONCLUSION

The judgment is affirmed.

Franson, Acting P. J., and Hamlin, J., concurred.

A petition for a rehearing was denied June 26, 1984, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied August 8, 1984.