[No. G001059. Fourth Dist., Div. Three. Oct. 29, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JESUS CARRANZA MONTENEGRO, Defendant and Appellant.

---

**COUNSEL**

Michael Ian Garey for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Robert M. Foster, Deputy Attorney General, for Plaintiff and Respondent.

---

**OPINION**

**SONENSHINE, J.**—Jesus Carranza Montenegro pleaded guilty to narcotics offenses (Health & Saf. Code, § 11351; Bus. & Prof. Code, § 4143, subd. (a)) and admitted he previously served a term in state prison for possessing narcotics (Pen. Code, § 667.5, subd. (b)). He appeals the denial of his motion to suppress evidence (Pen. Code, § 1538.5, subd. (m)), challenging the lawfulness of a parole search conducted jointly by police and a parole agent. We affirm.

Police received information from a confidential informant that a certain dealer supplied a narcotics suspect. The dealer lived near Bristol and the

Garden Grove Freeway and drove a black compact pickup truck with a yellow, red and white striped camper shell. A surveillance officer saw such a truck parked at Montenegro's apartment complex, on Bristol, near the freeway. Montenegro was seen driving the truck. Officers learned he was on parole and confirmed this with his parole agent.

A police officer also confirmed Montenegro was subject to the standard search and seizure condition imposed on virtually all state prison parolees. The "Notice and Conditions of Parole" signed by Montenegro upon his release from prison in 1982 states: "You and your residence and any property under your control may be searched without a warrant by any agent of the Department of Corrections or any law enforcement officer." The police officer expressed his desire to participate in a parole search, with a parole agent. Montenegro's agent agreed and advised the police officer to "just let him know" when.

Four days later, the police believed a known narcotics user might be present in Montenegro's apartment and called the parole agent to request his presence to conduct a search. Because Montenegro's supervising agent was not in, a different parole agent agreed to participate in the search with the officers. That agent testified he made an independent decision to conduct a parole search, based in part on the information from the police that Montenegro was suspected of dealing narcotics. The agent also considered evidence of Montenegro's use of narcotics, as shown by urine samples submitted to his parole agent.

The parole agent knocked on Montenegro's apartment door and announced, "Parole"; Montenegro looked out the window and mouthed the words, "Okay, okay." The doorknob moved but the door did not open. The parole agent tried the door but it was locked. A police officer shouted, "Police, open the door." There was still no response. The agent directed the officer to break open the door, which he did. A young child was standing inside near the door; Montenegro was headed up the stairs. The ensuing search led to the seizure of heroin, a syringe and $20,000 in cash, which Montenegro sought to suppress.

I

Montenegro asserts the forced entry into his home cannot be justified by any exception to the warrant requirement. The prosecution concedes there was no probable cause justifying the entry and search. However, it correctly points out that probable cause is not necessary when conducting this type of parole search. (*People* v. *Mason* (1971) 5 Cal.3d 759 [97 Cal.Rptr. 302, 488 P.2d 630], disapproved on other grounds in *People* v.

*Lent* (1975) 15 Cal.3d 481, 486, fn. 1 [124 Cal.Rptr. 905, 541 P.2d 545]; *People* v. *Britton* (1984) 156 Cal.App.3d 689 [202 Cal.Rptr. 882].)

■ Montenegro alternatively argues the search cannot be justified as a parole search. He contends the police officers knew they did not have enough information to get a search warrant. He argues they used the parole agent only as a ruse to conduct the search. We disagree.

■ It is true "[p]arolee status alone does not justify a search by peace officers other than parole agents. [Citations]." (*People* v. *Natale* (1978) 77 Cal.App.3d 568, 574 [143 Cal.Rptr. 629]; *People* v. *Coffman* (1969) 2 Cal.App.3d 681, 688 [82 Cal.Rptr. 782].) Nevertheless, "[t]he purpose of the search, not the physical presence of a parole agent, is the vital element." (*Ibid.*) ■ The *Coffman-Natale* rationale could be rejected as inapposite, simply because the parole condition in this case specifically authorizes a "law enforcement" search, whereas the conditions in *Coffman* and *Natale* were limited to "parole agent" searches. (*Hernandez* v. *Superior Court* (1980) 110 Cal.App.3d 355, 366 [185 Cal.Rptr. 127].) But more importantly, as in *Hernandez,* the parole agent here made an independent determination to search Montenegro's apartment. This justifies the validity of the search irrespective of law enforcement participation. Montenegro suggests the primary motivation was to conduct a police search; that, however, was not the only motivation. Such a dual purpose does not invalidate the search. Our review of the record "reveals that the search and the arrest were lawful and legitimate parole administration functions and not mere law enforcement duties and actions." (*People* v. *Wagner* (1982) 138 Cal.App.3d 473, 479 [188 Cal.Rptr. 185].)

## II

■ Next, Montenegro asserts parole searches are unlawful because they are premised on a theory he claims is no longer viable: "consent" to waive certain Fourth Amendment rights in exchange for early release on parole. Both *People* v. *Icenogle* (1977) 71 Cal.App.3d 576 [139 Cal.Rptr. 637] and *People* v. *Mason, supra,* 5 Cal.3d 759[1] validated search conditions as consensual waivers of Fourth Amendment rights. Montenegro asserts these cases are inapposite because they predate the Determinate Sentencing Act. He correctly points out the majority of state prisoners, like himself, now serve determinate, not indeterminate, sentences. Therefore, he concludes prisoners have no choice of rejecting or accepting parole under conditions proposed by parole authorities. They are entitled to release at the

---

[1]The import of *Mason* is currently pending in our Supreme Court in *People* v. *Bravo* (Crim. No. 24540, review granted May 16, 1985).

conclusion of their determinate sentence. Thus, under the Determinate Sentencing Act, there is no bargaining for early release on parole and therefore no "consent" to waive certain rights in exchange for parole.

The Determinate Sentencing Act does change the equation, but not the result. (*People* v. *Britton, supra,* 156 Cal.App.3d 689.) *Britton* upheld a search based on an identical parole condition, involving a parole under the Determinate Sentencing Act. We agree with *Britton* to the extent it holds such conditions reasonable. *Britton,* however, avoided deciding Montenegro's consent argument directly, although Britton raised the same argument Montenegro makes before this court. ■ We would go further than the holding in *Britton* and expressly hold a parole condition cannot be justified as a consensual waiver of a known right.

■ A defendant sentenced determinately is entitled to release at the conclusion of the sentence. However, the sentence *includes* a period of parole supervision. During that time a parolee enjoys greater constitutional protections than in prison, but certainly less than had he never been convicted of a felony. (*Id.,* at p. 695, citing *In re Caudillo* (1980) 26 Cal.3d 623, 636 [164 Cal.Rptr. 692, 610 P.2d 1021] and Pen. Code, § 3000.) ■ "Thus, under the Determinate Sentencing Act a parolee is in 'custody' until his parole period expires." (*People* v. *Britton, supra,* 156 Cal.App.3d at p. 695.) ■ Even though we conclude Montenegro did not "consent" to the conditions, the search condition attached to his parole is valid as an administrative tool to supervise his readjustment after release. (*Id.,* at p. 697.)

### III

■ Alternatively, Montenegro asserts "reasonable cause" is necessary to justify a parole search, and contends it was lacking here. Without engendering extraneous debate on the necessity of "reasonable cause,"[2] we find the information from the police, coupled with indications from urine tests that Montenegro was using narcotics, justified the search under his parole conditions. In fact, the parole agent would have been derelict in his duties had he ignored the information and refused to participate in the search.

### IV

■ Finally, Montenegro contends the agent and police failed to comply with statutory knock-notice requirements before entering his apartment.

---

[2]Whether reasonable cause is necessary will presumably be decided in *People* v. *Bravo, supra.* See footnote 1.

(Pen. Code, §§ 844, 1531.) ■ It is settled a parole search condition will not excuse entries without knock and notice compliance. (*People* v. *LaJocies* (1981) 119 Cal.App.3d 947, 952 [174 Cal.Rptr. 100].) *LaJocies* also validated the principle that substantial compliance will excuse strict literal compliance, as long as "the policies and purposes of the requirements have been satisfied. [Citations.]" (*Id.,* at p. 953.)

■ Substantial compliance existed here. The parole agent and police officer knew Montenegro was aware of their presence and purpose. He mouthed the words, "Okay, okay" through the window in response to their knock and announcement. It is true they waited only seconds after announcing themselves a second time and forcing entry. However, the amount of time is irrelevant because Montenegro had already acknowledged their presence. His failure to comply in these circumstances justified entry. Those cases which require officers to wait a reasonable period of time are inapposite. Montenegro knew they were there and knew what they wanted. His failure to open the door immediately justified the forced entry.

Judgment affirmed.

Trotter, P. J., and Wallin, J., concurred.

A petition for a rehearing was denied November 25, 1985, and appellant's petition for review by the Supreme Court was denied February 14, 1985.