Filed 5/28/14  P. v. McCoy CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| THE PEOPLE, | C072425 |
| Plaintiff and Respondent, | (Super. Ct. No. SF120911A) |
| v. | |
| RAMON RASHOD McCOY, | |
| Defendant and Appellant. | |

After his motion to suppress evidence was denied, defendant Ramon Rashod McCoy pleaded guilty to possession of a firearm by a convicted felon.  (Pen. Code, § 29800, subd. (a)(1).)[1]  In exchange, six related counts and allegations were dismissed. Defendant was sentenced to prison for a stipulated upper term of three years and ordered to pay various fines and fees.

---

[1]  Undesignated statutory references are to the Penal Code.

1

On appeal, defendant contends his suppression motion should have been granted because (1) there was insufficient justification for his detention and the search of his backpack, and (2) the prosecution's failure to file a response to the suppression motion, purportedly required by a local rule, warranted the sanction of suppression of the evidence.

We affirm.

### FACTS FROM SUPPRESSION HEARING[2]

On October 23, 2012, the trial court heard the joint suppression motion of defendant and codefendant Patrice Duncan, who is not a party to this appeal.

The only witness at the suppression hearing was Stockton Police Officer Jeffrey Pope. He testified that on July 10, 2012, at about 11:45 p.m., he was on patrol in Stockton, wearing a uniform and driving a marked police car. While driving westbound on Martin Luther King Boulevard (MLK), Officer Pope saw an "unusual[ly] colored" sports car, black with a yellow racing stripe, pull out of a gas station and head eastbound on MLK at "a higher rate of speed."

Officer Pope observed in his rearview mirror that the sports car appeared to be traveling "much faster" than other traffic. Officer Pope made a U-turn and attempted to catch up with the sports car.

---

[2] The prosecutor asked the trial court to review the transcript of the preliminary examination before ruling on the suppression motion. In its ruling the trial court referred to evidence contained in the transcript. Defendant did not object. Accordingly, our statement of facts includes facts developed at the preliminary examination. (See also, Super. Ct. San Joaquin County, Local Rules, rule 2-102.1(5) [failure of a party to state an unwillingness to stipulate that the transcript of the preliminary examination may be received into evidence at the section 1538.5 hearing is deemed a stipulation that the transcript may be admitted]; further references to Local Rules are to the Super. Ct. San Joaquin County, Local Rules.)

At the intersection of MLK and Airport, Officer Pope saw taillights similar to those of the sports car heading southbound on Airport. He turned onto Airport to follow the taillights. In an attempt to catch up to the car, Officer Pope hit speeds of 80 miles per hour while passing other traffic on Airport. Finally, he pulled in behind the car, which was stopped for a red light, and recognized it as the sports car that had drawn his attention. Officer Pope followed the car as it made a left turn at the light, then a right turn, and finally another left turn before pulling over and coming to a stop at what was later determined to be Duncan's residence.

Officer Pope testified that the driver failed to signal before making the last two turns and before pulling over to park. After the sports car came to a stop, Officer Pope "activated [his] overhead lights . . . for the traffic violations" and parked his car. On cross-examination by counsel for Duncan, Officer Pope identified "the traffic violation [he] stopped [defendant] for" as "the turn signals," or, more precisely, the lack of turn signals. When asked on cross-examination whether he would change anything in his police report, Officer Pope stated he would add that he stopped defendant for failing to use turn signals.[3]

Officer Pope approached the sports car to contact the driver, whom he identified in court as defendant. Officer Pope told defendant to remain in the car, which he did. Officer Pope then asked defendant for his driver's license. Defendant responded that he did not have it in his possession, but he knew the number on the license.

_____

[3] When asked whether the turn signal violation was the only violation for which he could "legitimately" stop defendant, Officer Pope testified that defendant "was speeding," but, he believed the lack of turn signals was "in [his] mind, more valid stop reason than the speed when [he] couldn't clock the speed."

Officer Pope asked defendant if he was on probation or parole. Defendant said, "Yes, I am on parole," and added that it was "for possession." Officer Pope then had defendant step out of the car, patted him down for weapons, handcuffed him, and placed him in the back of the patrol car. Defendant was secured in the patrol car because there was another occupant in the sports car and Officer Pope intended to do a parole search of the car.

Officer Pope returned to the sports car and asked the female occupant, Duncan, if she was on probation or parole. She said, "no."

Officer Pope noticed that Duncan had a backpack on the floorboard between her legs. The backpack was open or unzipped at the top, and it would have been within the reach of defendant had he still been in the car. Officer Pope wanted to search the backpack as part of the parole search. The backpack had no name on it and bore no indication of who owned it.

Duncan stepped out of the sports car and slung the backpack over her shoulder. Officer Pope stopped her before she could travel in any direction. After "a little struggle" during which Duncan refused to relinquish the backpack, Pope handcuffed her and thereafter searched the backpack.

The backpack contained a loaded revolver, two plastic baggies containing 0.3 grams of heroin and 2.62 grams of methadone, a digital scale, and two documents bearing the name of defendant. There were no indicia of ownership by Duncan in the backpack.

After Officer Pope testified, the trial court heard arguments from the parties. Defendant's counsel argued that the fact Officer Pope had driven at 80 miles per hour in order to catch up to the sports car did not prove that defendant had been speeding. Defendant's counsel also challenged Officer Pope's credibility, noting that Pope had not mentioned any turn signal violations in his police report or in his testimony at the preliminary examination. "It's not until we came to a [section] 1538[.5] motion where all of a sudden these turn signal violations come out."

4

Codefendant Duncan's counsel joined in the remarks of defendant's counsel, stated he did not see "the probable cause for the search," and argued there was not "necessarily a connection between the backpack and [defendant's] parole status," which had been "the only basis" Officer Pope had "proposed as a reason to search."

The prosecutor defended the credibility of Officer Pope's testimony, noting that it was highly consistent with his testimony at the preliminary examination. In response to defendant's counsel's argument, the prosecutor noted that "[n]o one asked [Officer Pope] when he remembered" the turn signal violations. The prosecutor further argued "this was a parole search, you can do a parole search for all items within the parolee's reach. Clearly, the backpack was within the parolee's reach. There was no identification on whose backpack that was."

The trial court ruled: "Okay. And actually, the very beginning of the preliminary [examination], under direct, Officer Pope was asked, 'And why did you activate your lights? [¶] I stopped them for a traffic violation. [¶] Question: You saw? [¶] Yes.'[4] [¶] So it was clear he was stopped for a traffic violation. Whether -- *but* the fact he had to go 80 miles an hour to catch up to the car is probable cause that car probably was

---

[4] The entire set of questions and answers on this point were as follows:

"[PROSECUTOR:] And where did you stop the defendants?

"[POPE:] I didn't actually stop. They stopped themselves, and I activated my lights as they pulled over in front of 1502 E. 9th Street.

"[PROSECUTOR:] And why did you activate your lights?

"[POPE:] I had stopped them for [a] traffic violation.

"[PROSECUTOR:] That you saw?

"[POPE:] Yes."

5

speeding and the officer had a right to pull him over based on that. [¶] The backpack was in the clear possession of -- not clear possession, but in the control of [defendant]. It's a small car, was on the floorboard. Even if it had been in the back seat, [t]his Court would find that under the parole search conditions, it would have been rightfully searched. [¶] So the [section] 1538[.5] [motion] is denied." (Italics added.)

## DISCUSSION

### I. Denial of the Suppression Motion

Defendant contends his suppression motion should have been granted because the evidence was insufficient to support his detention and the ensuing search of the backpack. We begin with defendant's claim that the traffic stop was unlawful because (1) the trial court upheld the stop based on speeding, not turn signal violations; (2) there was no substantial evidence defendant was speeding; and (3) his failure to use a turn signal was not necessarily a violation. After considering these points, we address defendant's claims related to the search of the backpack.

### A. Standard of Review

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]" (*People v. Saunders* (2006) 38 Cal.4th 1129, 1133-1134.)

### B. Traffic Violations

Defendant claims the trial court "justified the stop based on speeding, not turn signal violations." His claim is based on his trial counsel's argument that Officer Pope's testimony regarding turn signals was not credible, inasmuch as he (1) failed to include the information in the police report or testify about it at the preliminary hearing, and (2) probably lacked independent recollection of the event. Defendant now infers that "the

6

trial court was unwilling to credit the testimony regarding the alleged failure of [defendant] to use his turn signals." We disagree.

The trial court did not expressly state that it disbelieved Officer Pope's testimony about the turn signals. Nor did the court make a finding that there was insufficient evidence of turn signal violations to justify the stop. To the contrary, the trial court noted in its ruling that, at "the very beginning of the preliminary hearing, under direct, Officer Pope was asked, 'And why did you activate your lights? [¶] I stopped them for a traffic violation. [¶] Question: You saw? [¶] Yes.' [¶] So it was clear he was stopped for a traffic violation." On cross-examination at the suppression hearing, Officer Pope testified that the traffic violations for which he stopped defendant were the turn signal violations. Thus, in context, the trial court's finding that "it was clear he was stopped for a traffic violation" is *a finding that he was stopped for the lack of turn signals.*[5]

After the court found "it was clear he was stopped for a traffic violation," the court went on to note, "*but* the fact [Officer Pope] had to go 80 miles an hour to catch up to [defendant's] car *is probable cause that car probably was speeding* and the officer had a right to pull him over based on that." (Italics added.) We view this follow-up statement as an alternative ground for denial of the suppression motion. That this was intended as an alternative ground is evidenced by the court's use of the word, "but" following its observation that it was clear defendant had been stopped for a traffic violation.[6] Thus,

---

[5] We also note that Officer Pope was not asked at the preliminary hearing about the nature of the traffic violations that caused him to activate his lights, and because the defense did not raise the suppression issue at that time (§ 1538.5, subd. (f)(2)), there was no need for the prosecutor to develop that evidence or for Officer Pope to be more specific at that time.

[6] We note that defendant quoted the trial court in his opening brief, but omitted the word "but."

7

contrary to defendant's assertion, that follow-up statement does not detract from the trial court's finding that defendant failed to use turn signals - it adds to it. As for defendant's contention that the evidence supporting the alternative finding that he was speeding was insufficient, we need not consider it further because the evidence of turn signal violations is sufficient to justify the stop.

Officer Pope's testimony is substantial evidence of the historical fact that defendant failed to activate his signals. (*People v. Saunders, supra,* 38 Cal.4th at pp. 1133-1134.) Defendant claims he had no duty to signal because there was insufficient evidence that his unsignaled turning motions may have affected another vehicle. We disagree.

Vehicle Code section 22107 provides: "No person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided in this chapter *in the event any other vehicle may be affected by the movement.*" (Italics added.)

Defendant's argument overlooks Officer Pope's testimony that, after pulling in behind defendant while he was stopped for a red light, Pope followed defendant for one to two and a half blocks as he made a left turn, then a right turn, and finally another left turn before pulling over and coming to a stop at Duncan's residence. Defendant failed to signal during the last two turns as well as when he pulled over.

"[A] signal is primarily aimed at vehicles behind the car making the lane change. That even applies to a patrol car, irrespective of the lack of any other traffic." (*People v. Logsdon* (2008) 164 Cal.App.4th 741, 744, fn. omitted; *People v. Miranda* (1993) 17 Cal.App.4th 917, 930.) At the time of the first turn signal violation, Officer Pope was two car lengths behind defendant's vehicle. When defendant made the second turn without signaling, Officer Pope was a single car length behind defendant. Thereafter, defendant drove only "a few yards" before he pulled over to the side of the road, again

8

without signaling.  Thus, there was substantial evidence that Officer Pope's patrol car was directly behind defendant and may have been affected by his failure to signal. Officer Pope's observation of the failures to signal, by a car traveling closely in front of him, provided an objective manifestation that an activity related to crime has taken place, and that defendant was involved in that activity.  (*People v. Souza* (1994) 9 Cal.4th 224, 230; *In re Tony C*. (1978) 21 Cal.3d 888, 893.)  The failure to signal observed by Officer Pope justified a temporary detention of defendant.  We, therefore, reject defendant's claims that the detention was unlawful, and the contents of the backpack were poisoned fruit of the unlawful stop.

### C.  Proof that Defendant was on Parole

Defendant claims that Officer Pope's search of the backpack was unlawful because the prosecutor did not prove that defendant was on parole.  This claim meritless.

After defendant offered to furnish his driver's license number, Officer Pope asked him if he was on probation or parole.  Defendant said, "Yes, I am on parole," and added that it was "for possession."  The statement is an admission (Evid. Code, §1220) and a statement against defendant's penal interests.  (Evid. Code, § 1230.)  Thus, the statement is admissible for the truth asserted therein.  Consequently, defendant's statement was sufficient proof that he was on parole.

Moreover, as this court long ago held, when a defendant tells an officer that he is subject to a search condition, the officer can reasonably rely on that statement and if it later turns out the defendant is not subject to the condition, evidence found during the search will not be suppressed.  (*In re Jeremy G.* (1998) 65 Cal.App.4th 553, 556 (*Jeremy G*.).)  This court implied that certain circumstances may make the officer's reliance on a defendant's statement unreasonable, e.g., circumstances apparent to the officer that the defendant is immature or lacking normal intelligence.  (*Ibid*.)  No such circumstances are present here.  Since it was reasonable for Officer Pope to rely on defendant's statement,

9

he was entitled to conduct the search and the trial court did not err in denying defendant's suppression motion.

Defendant counters that a person, who previously has been informed that he is on parole, may not subsequently be advised that he *is no longer* on parole. "That is, one can come off parole without necessarily knowing about it." But there is no evidence of that here.[7] Defendant's admission is evidence that he was on parole and in the absence of evidence to the contrary, his statements amount to substantial evidence of this fact. Moreover, from the perspective of Officer Pope's good faith reliance on the statement, whether defendant's belief of his parole status was accurate "is immaterial. The question here is not whether [defendant] had a searchable condition attached to his release; rather the question is whether Officer [Pope] was reasonable in relying on [defendant's] statement that he had such a condition." (*Jeremy G., supra,* 65 Cal.App.4th at p. 556.) Because, being a parolee is against a person's interest, an officer may reasonably infer, absent evidence to the contrary, that defendant monitored his status and would have asserted he *is no longer* on parole if he truthfully could do so.

### D. Search of the Backpack

Defendant contends that the parole search did not lawfully extend to the backpack because it was in the exclusive control of Duncan. He argues (1) the backpack, like a purse, was a repository for personal items; (2) it was observed only in Duncan's immediate possession; (3) and she never let it leave her control. From these facts, defendant concludes Officer Pope lacked the requisite " 'reasonable suspicion' " that the backpack was within the scope of defendant's parole search condition.

---

[7] Unlike in *Jeremy G.*, where it was later determined that the minor was not subject to a search condition, there is no evidence here establishing that defendant was not, in fact, on parole at the time of the search.

Defendant's first point fails because the backpack's physical appearance did not identify it as "a repository for" the personal items of Duncan, as opposed to defendant. (Cf. *People v. Baker* (2008) 164 Cal.App.4th 1152, 1159 [male driver did not have joint control of female defendant's purse].) In fact, the exterior appearance of the backpack bore no clues of any particular person's ownership.

Officer Pope observed the backpack within reach of defendant on the passenger floorboard of the defendant's small compact sports car, a Nissan 300Z. Thus, contrary to defendant's second point, Officer Pope did not observe the backpack "only" in Duncan's possession and reasonably could infer from the circumstances that the backpack was in at least the joint possession of defendant and Duncan. (*People v. Schmitz* (2012) 55 Cal.4th 909, 924, citing *Maryland v. Pringle* (2003) 540 U.S. 366, 372 [157 L.Ed.2d 769] [reasonable to infer that driver and front and rear passengers had knowledge of, and exercised dominion and control over, cocaine in an area accessible to all of them]; cf. *People v. Britton* (1984) 156 Cal.App.3d 689, 700-703 [search of closet containing male and female clothing; pistol in bag on shelf was in joint custody of parolee], disapproved on other grounds in *People v. Williams* (1999) 20 Cal.4th 119, 135 (*Williams*).)

This brings us to defendant's third point, that Duncan asserted control over the backpack when she carried it out of the car and refused to let Officer Pope examine it. Defendant notes that Duncan "never let the [backpack] out of her control and indicated to the officer that it was hers alone."

But prior to these acts, defendant had been removed from the car and secured in the patrol car. The fact that Duncan ended up asserting control over the backpack *after defendant had been removed from the car* does not reasonably demonstrate that she had enjoyed *sole* control *prior* to that point. Duncan's actions could simply indicate her belief that the backpack should not be left behind in the car or examined by Officer Pope. The trial court did not err in ruling that the subsequent search of the backpack was a valid parole search.

11

## II. Motion Practice Sanction

Defendant contends his suppression motion should have been granted as a sanction for the prosecution's violation of local rules that purportedly required it to file a written response to his motion. We disagree. Defendant misunderstands the local rules.

### A. Background

Defendant filed his notice of motion to suppress evidence on September 24, 2012. Defendant's points and authorities in support of the motion specified that the search was conducted without a warrant and that the burden shifted to the prosecution to justify the police officer's actions, citing *Williams, supra,* 20 Cal.4th at pages 129-130, 135-136. The prosecution did not file a written response to the motion.

At the suppression hearing on October 23, 2012, defendant's counsel asserted that the prosecution had violated section 1538.5, subdivision (i)[8] and Local Rules, rule 2-102(D)[9] by failing to file responsive points and authorities. Since one of the possible sanctions for criminal motion practice noncompliance provided in Local Rules, rule 2-

---

[8] Section 1538.5, subdivision (i) provides in pertinent part: "*Any* written response by the [P]eople to the motion shall be filed with the court and personally served on the defendant or his or her attorney of record at least two court days prior to the hearing, unless the defendant is willing to waive a portion of this time." (Italics added.) Defendant does not repeat the claim that the prosecutor violated this section by not filing a written response. As can be seen from the italicized word, "Any," the Legislature did not mandate that a written response be filed; it only mandated that if *any* response is filed, it must be filed at least two days prior to the special hearing."

[9] Local Rules, rule 2-102(D) states: "Absence of a memorandum of points and authorities shall be deemed by the court to be a concession that the *motion* lacks merit. No issues other than those set forth in the memorandum of points and authorities will be considered unless the new issues were not reasonably discoverable before the motion was filed or there is other good cause shown." (Italics added.)

104 was "exclusion of evidence," defendant's counsel urged the trial court to grant his suppression motion, essentially by default.[10]

The prosecutor responded that he was unsure what defense counsel was "actually calling out," and "unsure what to even respond to," because the preliminary examination had raised issues of traffic violations, excessive speed, and parole violations; and none of them had been addressed in defendant's filing.

The trial court stated that defense counsel was correct, in that local rules require a response to the motion. The court declined to impose the sanction of granting the suppression motion, but it reserved the issue of imposition of other sanctions. As will be seen, both defendant and the trial court were mistaken about the local rules.

### B. Analysis

Local Rules, rule 2-102(D) applies to motions, not to responses to motions. Local Rules, rule 2-102 applies to criminal *motion practice in general*, and Local Rules, rule 2-102(D) expressly states that the absence of points and authorities shall be deemed to be "a concession that the *motion* lacks merit." It does not say that the failure to file a written response shall be deemed a concession that the motion is meritorious. Nor does it say that the failure to file a written response shall be deemed a concession that any response would lack merit. By its express terms, the rule provides that *motions*, unsupported by points and authorities, are deemed to lack merit. Moreover, while Local Rules, rule 2-102 applies to general motion practice in criminal cases, Local Rules, rule 2-102.1 is the

---

[10] Local Rules, rule 2-104 states: "In the event of a failure to comply with . . . [Local Rules, rule] 2-102, . . . the court *may* impose sanctions including a monetary fine, a refusal to hear the motion, continuance, exclusion of evidence, issue preclusion, or any other relief or sanctions the court deems appropriate." (Italics added.)

specific local rule applicable to section 1538.5 motions,[11] and nothing in that rule requires the prosecution to file a written response either.

A local rule of court that would provide for the suppression of prosecution evidence for failure to file a response to a defendant's section 1538.5 motion would violate article I, section 28, of the California Constitution, the Truth-in-Evidence provision of Proposition 8. Pursuant to that constitutional provision enacted by the electorate, a trial court may exclude evidence under Penal Code section 1538.5 only if

---

[11] Local Rules, rule 2-102.1 provides: "Failure to comply with any portion of this rule may constitute cause for denial of the motion. [¶] In all cases, the motion must be written and must comply with [Local Rules,] rules 2-101, 2-102 and [section] 1538.5 . . . . The following requirements apply in addition to those specified in those rules: [¶] 1. List of Items to be Suppressed or Returned: [¶] The moving party shall include a complete itemized list of the specific items of property or other matters sought to be suppressed or returned. A general request to suppress or return 'all evidence seized,' without greater specificity, is not sufficient and shall be deemed an abandonment of the motion. Only the items listed in the motion will be considered by the court for suppression or return unless it is established the newly identified item could not reasonably be identified before the motion was filed. [¶] 2. Specification of Factual and Legal Basis for Motion: [¶] The moving party's memorandum of points and authorities shall identify the specific legal and factual basis and cite the specific authority which will be offered to support the claim the search or seizure was defective. Failure to identify the specific legal and factual basis for the claim will be deemed a concession the search and/or seizure was lawful and will result in summary denial of the motion. [¶] 3. Specification of Intended Witnesses: [¶] Moving and responding parties shall specify on the first page of the notice of motion or response the name of the witnesses, if any, they intend to call at the hearing. [¶] 4. Copy of Search Warrant, Affidavit, and Inventory: [¶] If relevant to the motion, legible copies of the search warrant, affidavit in support of the warrant, and return and inventory shall be appended to the moving papers. [¶] 5. Stipulation to Transcript of Preliminary Examination Superior Court: [¶] When any party is unwilling to stipulate to the transcript of the preliminary examination or grand jury hearing being received into evidence (supplemented by other testimony and argument of counsel, as needed), that fact shall be stated on the first page of the notice of motion or response. Failure to so indicate shall be deemed a stipulation to the admission of the transcript into evidence."

14

exclusion is mandated by the federal Constitution.  (*People v. Banks* (1993) 6 Cal.4th 926, 934; *In re Lance W.* (1985) 37 Cal.3d 873, 896.)

That the trial court mistakenly thought its local rules required a written response and that the failure to file a written response was sanctionable does not aid defendant here.  The trial court appropriately denied defendant's motion to suppress the evidence found in the backpack.

## DISPOSITION

The judgment is affirmed.


      MURRAY      , J.


We concur:


      BLEASE      , Acting P. J.


      HOCH      , J.

15