[No. F012180. Fifth Dist. Oct. 12, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
CONNIE SUZANN BOYD, Defendant and Appellant.

738

COUNSEL

William E. Rowen, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Michael J. Weinberger and Joel Carey, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BAXTER, Acting P. J.—

## INTRODUCTION

Connie Suzann Boyd appeals from a judgment of conviction of drug offenses based on the superior court's denial of her motion to suppress contraband found in her handbag. (Pen. Code, § 1538.5.) The handbag was in a travel trailer occupied by appellant and Tim Mitchell, a parolee. The trailer was owned by parolee Allen Santos and was parked next to his home. The search was based on search conditions applicable to both parolees. We will conclude the officers had reasonable suspicion that the handbag was owned or controlled by a parolee and thus its search was within the scope of the parole search. The court properly denied the suppression motion. We affirm.

## FACTS AND PROCEEDINGS

Allen Santos and Tim Mitchell were both on parole and had histories of methamphetamine use. Their parole agent was Jim Wetmore.

On September 19, 1988, Wetmore accompanied a Turlock Police Department narcotics agent to a house, which was known to be a place for the sale and use of methamphetamines, and observed Santos's vehicle parked outside. On September 26, Wetmore received an anonymous phone tip that

Tim Mitchell was dealing in crank methamphetamines. On September 29, Santos's ex-wife contacted Wetmore and reported Santos was using methamphetamines and threatened her with a knife. Wetmore also received a tip Mitchell was associating with Santos. Wetmore suspected Mitchell was staying with Santos because Mitchell was evasive when Wetmore asked for his residence address.

Wetmore decided to search Santos's residence in Stevinson pursuant to the search clause in his parole agreement. It states that Santos's property "and any property under his control can be searched without a warrant by [Wetmore] or any other law enforcement officer." Mitchell's parole agreement contains an identical search clause.

On October 2, Wetmore coordinated the search of Santos's residence with other law enforcement officers. Wetmore briefed the officers, noted the relationship between Santos and Mitchell, and advised that Mitchell might be present at Santos's residence. The officers observed a small travel trailer parked adjacent to the rear of Santos's home. Parole agents Wetmore and Janice Spangard were aware the trailer was owned by Santos. It is registered to Santos through the Department of Motor Vehicles.

The officers knocked on the front door of the residence, waited approximately 30 seconds, then announced their presence and entered. Santos and his girlfriend were in the house. Wetmore directed an officer to search the house and another to search the trailer. Agent Janice Spangard knocked on the door of the trailer and identified herself. She heard movement inside the trailer before the door was opened. Tim Mitchell and appellant Connie Boyd exited the trailer and were escorted inside Santos's house.

Agents Dennis Evans and Spangard searched the trailer, which consisted of one small room with a bed, table, closet and kitchen. It appeared the bed had been slept in, and there were articles of women's clothing on the floor. Agent Evans found the handbag on the bed, partially covered by a pillow. Evans initially saw the back zipper of the handbag. He picked it up and "immediately unzipped the bag." Evans discovered several plastic baggies of methamphetamine, a hypodermic kit (consisting of a syringe and needles), a small bottle of water, and cotton. He turned the bag around and noticed a small clasp. When he opened the front part of the bag, he observed cosmetics inside. He also found a court's minute order containing appellant's name. Evans went into Santos's house and asked appellant, " 'Is this your purse?' " Appellant replied that it was, and she was placed under arrest.

An information was filed charging appellant with count I, possession of methamphetamine for sale (Health & Saf. Code, § 11378); count II, being

under the influence of methamphetamine (Health & Saf. Code, § 11550); count III, possession of controlled substance paraphernalia (Health & Saf. Code, § 11364); and count IV, possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). Appellant pled not guilty to the charges.

On February 3, 1989, appellant filed a motion to suppress the handbag and its contents pursuant to Penal Code section 1538.5, contending the search and seizure violated her reasonable expectation of privacy. During the suppression hearing, appellant testified she spent the night with Mitchell in the trailer. She acknowledged ownership of the handbag and said she placed it on the table before she exited the trailer. Agents Wetmore and Evans testified they had seen similar handbags used by men to store methamphetamine and rock cocaine.

During argument on the suppression motion, the prosecution referred to the "bag," while the defense called it a "purse." The court commented on this disagreement, and provided its own description of the evidence: "The color is brown. The object doesn't look like an ordinary purse, in the sense that there is neither a handle, . . . you regard it as a clutch purse, if in fact it were a purse. [¶] But, on the other hand, it has a zipper across the back that has a rawhide strap hanging from it, apparently of the same leather as the face. [¶] The snap or clip in the matter—I can't say whether it's feminine or not feminine. But I think what I'm trying to say is that it doesn't look like a women's purse ordinarily looks, that is, it's not distinctively a female object. [¶] So when Counsel refers to it as a purse, that's one version of what it is. [¶] And if it's referred to as a bag on the other side, that's another version of what it is." The handbag is part of the record on appeal. It is rectangular, four inches wide by eleven inches long. The trial court's description is accurate. We agree that it is gender neutral in appearance.

The court denied the suppression motion, reasoning that the bag appeared gender neutral and the fact "one stays all night [with] one who is a parolee . . . causes society's determination of reasonableness to change." The court held that there was not a reasonable expectation of privacy and the search was proper.

A jury trial was held and appellant was found guilty of counts I, III, and IV. She was found not guilty of count II.

On May 19, 1989, appellant was placed on three years probation on condition she serve eight months in the county jail.

A notice of appeal was timely filed.

## DISCUSSION

### THE HANDBAG WAS WITHIN THE SCOPE OF THE PAROLE SEARCH.

Appellant contends the suppression motion was erroneously denied because (1) the "purse" is distinctly feminine in appearance and outside the scope of the parole search and, alternatively, (2) even if the bag appeared gender neutral, the officers were obligated to ask appellant if it was hers before searching it.

### A. *Standard of review.*

■ Our standard of review of a Penal Code section 1538.5 ruling is governed by well-settled principles enunciated by the Supreme Court: "In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] 'The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review.' [Citations.]

"The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, viz., the reasonableness of the challenged police conduct, is also subject to independent review . . . ." (*People* v. *Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221].)

The power to judge the credibility of witnesses, resolve conflicts in the testimony, weigh evidence and draw factual inferences is vested in the trial court. On appeal, this court must view the evidence in the light most favorable to the trial court's order denying the motion to suppress, and must affirm its determination if supported by substantial evidence. (*People* v. *Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585]; *People* v. *Icenogle* (1977) 71 Cal.App.3d 576, 585 [139 Cal.Rptr. 637].)

■ Whether evidence is subject to exclusion because of an illegal search and seizure must be determined pursuant to the Fourth Amendment of the federal Constitution; the state Constitution no longer affords independent grounds in determining the scope of the exclusionary rule. (*In re Lance W.* (1985) 37 Cal.3d 873, 888-890 [210 Cal.Rptr. 631, 694 P.2d 744]; *People* v. *Barbarick* (1985) 168 Cal.App.3d 731, 737 [214 Cal.Rptr. 322].)

A review of federal cases fails to reveal anything similar to the case at hand. Indeed, the Ninth Circuit has stated that the "[p]rimary responsibility" for ensuring that indiscriminate parole searches do not occur "rests upon the parole authorities, and, in this case, the California courts, not the federal courts. We have no reason to doubt that the California courts will be vigilant in protecting parolees against unreasonable searches." (*Latta* v. *Fitzharris* (9th Cir. 1975) 521 F.2d 246, 252 [32 A.L.R. Fed 135]; see also *United States* v. *Dally* (9th Cir. 1979) 606 F.2d 861, 862-863.)[1]

## B. *Reasonable suspicion is the standard to justify a parole search.*

We first review the general principles involved in a parole search. ■ A parole search may be expressly authorized in a parole agreement. (*People* v. *Burgener, supra*, 41 Cal.3d at p. 532.) Its justification is the state's interest in public safety through effective parole supervision. (*Id.* at p. 534.) Such an interest, however, recognizes the potential intrusion upon the privacy of nonparolees. "If a search is to have a parole supervision purpose . . . it must be based on information which leads the parole agent who conducts or authorizes the search to believe that the parolee has violated the law or another condition of his parole, or is planning to do so. Were this not so, a parole search would not only invade the parolee's reasonable expectation of privacy, but would unreasonably intrude into the privacy interests of persons with whom the parolee associates or resides. Inasmuch as authority to search the residence of a parolee extends to areas which are jointly controlled with other occupants of the residence [citations], the authority to search these premises necessarily portends a massive intrusion on the privacy interests of third persons solely because they reside with a parolee. [Citation.] A parole search must therefore be directly and closely related to parole supervision in order to avoid unreasonable invasion of the privacy interests of the parolee and those with whom he resides." (*People* v. *Burgener, supra*, 41 Cal.3d at pp. 533-534, fn. omitted.)

A parole agent may rely on information which provides less than probable cause to initiate a parole search. "The parole agent who authorizes the search must determine whether the information regarding a possible parole violation necessitates further investigation, and whether that investigation should include a search of the parolee and/or his residence for evidence of the suspected violation. ■ We have long recognized that the probable cause standard need not be applied to parole searches conducted for proper

---

[1] Whether California employs a different "state" standard for parole searches is questionable given the Supreme Court's statement that "in the context of the parole search at issue in this case, we discern no necessity to articulate a different standard of legality under state than under federal law." (*People* v. *Burgener* (1986) 41 Cal.3d 505, 529, fn. 11 [224 Cal.Rptr. 112, 714 P.2d 1251].)

parole supervision purposes." (*People* v. *Burgener, supra*, 41 Cal.3d at p. 534.) "[T]he appropriate standard of reasonableness to justify a parole search is a *reasonable suspicion* on the part of the parole officer that the parolee is again involved in criminal activity, or has otherwise violated his parole, and that the search may turn up evidence of that activity, or that evidence of a proposed future violation by the parolee will be uncovered. That suspicion must of course be based on articulable facts which together with rational inferences from those facts warrant objectively reasonable suspicion." (*Id.* at p. 535, italics added.)

Reasonable suspicion may exist through evidence that is insufficient to establish probable cause. A reasonable suspicion standard is also utilized to test an investigative stop or detention. (*United States* v. *Sokolow* (1989) 490 U.S. 1, 7 [104 L.Ed.2d 1, 10, 109 S.Ct. 1581, 1585]; *Terry* v. *Ohio* (1968) 392 U.S. 1, 30 [20 L.Ed.2d 889, 911, 88 S.Ct. 1868]; *In re Tony· C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957]; *People* v. *Brown* (1989) 213 Cal.App.3d 187, 192 [261 Cal.Rptr. 612].) The California Supreme Court articulated the standard as follows: "[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation], to suspect the same criminal activity and the same involvement by the person in question. The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith." (*In re Tony C., supra*, 21 Cal.3d 888, 893, fn. omitted.)

Appellant does not challenge the justification for the parole search of the travel trailer, nor should she. The evidence presented at the suppression hearing clearly met the reasonable suspicion standard articulated in *People* v. *Burgener, supra*, 41 Cal.3d at pages 533-534. ▉ The issue presented is whether the court erred in concluding the handbag was within the scope of the parole search and the appropriate standard the trial court should use in making that determination. For reasons we will amplify below, we conclude the court did not err and that the reasonable suspicion standard of *Burgener* controls whether an item of personal property is within the scope of a parole search.

C. *The handbag was not distinctively feminine in appearance.*

Appellant relies on *People* v. *Veronica* (1980) 107 Cal.App.3d 906 [166 Cal.Rptr. 109], to contend that her " 'distinctively female' purse" was beyond the scope of the parole search because it clearly appeared not to be the property of either parolee. In *Veronica*, a search was conducted of a male parolee's house while he was away. The parolee's wife admitted the parole agents into the home. Contraband was seized from a purse " 'hanging on the rear of the bedroom door, . . . It was a brown leather purse with designs on it. It appeared to be a purse that a female would wear.' " (*Id.* at p. 908.) On appeal from the husband's conviction, the court held the evidence seized from the purse should have been suppressed because the purse "was clearly the property of Mrs. Veronica." (*Ibid.*) The purse was " 'distinctly female,' " and there was nothing to indicate it was jointly shared by the defendant and his wife. The court, however, left open the possible validity of a search of such an item if jointly controlled: "We do not, of course, suggest that simply because a garment or container is clearly designed for a person other than the parolee, it may never be searched . . . . The particular circumstances may indicate that the object is, in fact, one of the parolee's own effects or, at least, jointly possessed by him and another. In this case, however, there was simply nothing to overcome the obvious presumption that the purse was hers, not his." (107 Cal.App.3d at p. 909.)[2]

In the instant case, the superior court found that the handbag was not a distinctly feminine object. Our observation of the rear part of bag, the only portion visible to agent Evans when he picked it up and opened the zipper, corresponds with the superior court's finding. It simply appears to be a rectangular handbag of a worn leather-type material. There is a single zipper running the length of the bag, with a rawhide strip tied to the zipper clasp. Nor does the front of the handbag appear distinctly female. There are no shoulder or hand straps or designs. The top folds over like an envelope with a small gold clasp. It is gender neutral in appearance.

■ " 'In reviewing a Fourth Amendment claim turning upon factual considerations, we may not reweigh the evidence and must indulge in any inference reasonably drawn by the trial court.' " (*People* v. *Palmquist* (1981) 123 Cal.App.3d 1, 13-14 [176 Cal.Rptr. 173].) The lower court's factual determination that the bag is not a distinctively feminine object is supported by the record. Thus, *Veronica* and *Alders* are inapplicable. Moreover, the critical issue is whether the officers reasonably suspected the handbag was owned or controlled by a parolee. If so, it was within the scope of the parole

---

[2] See also *People* v. *Alders* (1978) 87 Cal.App.3d 313, 317-318 [151 Cal.Rptr. 77], which rejected the search of a "distinctly female coat" during the search of a male parolee's residence.

search. The appearance of the object searched is but one of many factors to consider in assessing whether the reasonable suspicion standard was satisfied.

D. *The officer's failure to ask appellant whether she owned the handbag does not automatically invalidate the search.*

██ Appellant's alternative contention is that even if the handbag appeared gender neutral, the officer's failure to first inquire whether she owned it automatically invalidates the search. In *People* v. *Montoya* (1981) 114 Cal.App.3d 556 [170 Cal.Rptr. 624], parole agents went to Elaina Fierro's house to arrest her for a parole violation and to conduct a parole search. Two other women, Montiel (a parolee subject to a search condition) and appellant Montoya (not a parolee), were unexpectedly in the house and had been sleeping in the living room. Agent Heberle entered from the rear and observed narcotics paraphernalia in the kitchen. He knew that Fierro occupied a rear bedroom and kept her belongings in the bedroom closet. Several articles of clothing were on the living room floor and on chairs. Heberle knew Montiel was also on parole and decided to search the area where she had been sleeping. He searched a pair of cut-off Levi jeans and found narcotics paraphernalia. Montoya claimed ownership of the jeans when the agent removed the contraband from the pockets. During the suppression hearing, the agent testified to his subjective belief that the pants belonged either to Montoya or parolee Montiel. He searched the pants because of the search clause in Montiel's parole agreement, and because she was in a position to have control of the property. The superior court denied the suppression motion because of Montiel's presence and her status as a parolee subject to a search clause.

This court held the suppression motion should have been granted. The agent believed the pants belonged to a guest, and "he had no more reason to believe they belonged to Montiel rather than [Montoya]. The evidence therefore fails to show [the agent] subjectively believed the pants 'probably' belonged to parolee Montiel." (114 Cal.App.3d at p. 562.) The court reasoned that the probable cause standard applied to warrantless searches, and it "implies more evidence than 'equal' evidence." (*Ibid.*) The chance the pants might belong to the nonparolee required an inquiry into ownership: "Clearly, when there was but a 50-50 chance that the jeans and contraband belonged to [Montoya], [the agent] was under a duty to inquire as to who owned the jeans before searching them . . . . [The agent] could have avoided an unwarranted intrusion into an article of clothing belonging to appellant (a transient guest) by asking her if the cutoffs belonged to her, or by asking Montiel if they belonged to her. Such a simple questioning procedure

would have protected appellant's expectation of privacy as it related to her jeans." (114 Cal.App.3d at pp. 562-563.)

*People* v. *Palmquist, supra*, 123 Cal.App.3d 1, 12, discussed the privacy interests of the female roommate of a male probationer during a search of their joint residence. The search was initiated because of probationer Palmquist's suspected drug sales. Palmquist was apprehended while trying to escape when the officers entered the house, and his roommate returned during the search. The officers discovered marijuana in a refrigerator and in the pockets of a ski parka. The parka was found on the kitchen floor. Palmquist's suppression motion was denied by the superior court. On appeal, he relied on *Montoya* and argued there was only a "50 percent chance" the jacket and refrigerator belonged to him. Since there was no positive indication of ownership of these items, he argued, the officers needed a search warrant.

The Court of Appeal rejected *Montoya* and criticized it on two grounds. First, there was evidence in *Montoya* the agent subjectively and objectively believed the parolee and nonparolee exercised joint control over the jeans when they were discovered. Second, the court criticized *Montoya*'s use of a "probable cause" standard to determine whether a particular item was within the scope of the parole search, and concluded "reasonable cause" was the proper standard. (123 Cal.App.3d at pp. 12-13.) *Palmquist* concluded there was substantial evidence that the refrigerator was jointly controlled and thus within the scope of the probation search. *Palmquist* also distinguished *Veronica* in evaluating the search of the ski parka because "the parka was not 'distinctly female.' " (*Id.* at p. 13.) The record supported the superior court's factual determination the jacket was either jointly possessed by appellant and his female roommate or that it was appellant's own jacket. (*Ibid.*)

In *People* v. *Tidalgo* (1981) 123 Cal.App.3d 301 [176 Cal.Rptr. 463], this court properly invalidated a probation search because there was substantial evidence to support the superior court's conclusion that it was unreasonable for the officers to believe that the residence searched was owned or occupied by the defendant. The residence searched was outside the scope of the probation search. The court took the opportunity to summarize and reaffirm *Montoya*: "[W]here police officers do not know who owns or possesses a residence or item and such information can be easily ascertained, it is incumbent upon them to attempt to ascertain ownership in order to protect the privacy interest of both probationer and nonprobationer. [Citations.] If it is objectively unreasonable for officers to believe that the residence or item falls within the scope of a search condition, any evidence seized will be deemed the product of a warrantless search absent other

considerations. [Citation.] Whether the officer's belief is objectively reasonable would usually be a factual question to be resolved by the court hearing the suppression motion. [Citation.]" (123 Cal.App.3d at pp. 306-307, fns. omitted.)

This court partially broke with *Montoya* and distinguished it in *People* v. *Britton* (1984) 156 Cal.App.3d 689, 693 [202 Cal.Rptr. 882], which involved the search of an apartment a male parolee shared with his nonparolee girlfriend. An officer searched a closet which contained male and female clothing. On a shelf behind other articles was an opaque, closed paper bag which contained a pistol. The officer did not inquire about ownership of the bag because the parolee had already been transported to jail and the girlfriend was not present.

On appeal, the parolee relied on *Montoya* to argue the officer had an affirmative duty to ascertain ownership of the paper bag before it was searched. This court rejected the argument. "[T]he officers believed that the bag belonged to either Britton or his girl friend, both residents of the apartment searched. There was no question that the residence searched was Britton's, the area searched was under his and his girl friend's joint control, the paper bag did not have any 'identifiable' characteristics and a nonparolee was not present to question about the ownership of the bag. Britton suggests that he should have been detained in order to question him about the ownership of the bag. An officer could hardly expect that a parolee would claim ownership of an item which he knew contained contraband. To require the officer to get the parolee's 'consent' to search an item even though the parolee is subject to a warrantless search condition would render the search condition useless." (*People* v. *Britton, supra,* 156 Cal.App.3d at p. 701.) This court approvingly cited and discussed *Palmquist* for its criticism of *Montoya*. (*Id.* at pp. 701-702.) This court concluded that *Palmquist* controlled. "Britton and [his girlfriend] shared joint ownership of the apartment. The closet which was searched was an area of joint control. The brown paper bag was not 'distinctly' male or female." (156 Cal.App.3d at p. 702.) The officers knew the apartment was Britton's residence and had a reasonable belief the closet was under the joint control of Britton and his girlfriend. (*Id.* at p. 703.)

Appellant relies on *Montoya,* but acknowledges its criticisms in *Palmquist* and *Britton.* She attempts to distinguish the disparate holdings based on the nature of the property searched: "A purse is seldom if ever jointly owned by anyone. A purse is a distinctly individual object. While two people might share ownership in a purse, this is quite unlikely. Unlike a refrigerator or a ski parka [*Palmquist*], or the contents of a closet [*Britton*], appellant's purse had to belong either to her or to Timothy Mitchell, but not both of them."

Appellant argues the purse would have been immune from search if she had been carrying it, and there "is no logical reason why an inquiry into ownership is less necessary when the purse is found where appellant has been sleeping."

Appellant's categorization of the object searched as a "purse" contradicts the superior court's finding that it reasonably did not appear to be a woman's purse and was gender neutral. We reject a mechanical application of the *Montoya* rule to every parole search. ■ Moreover, we reject any suggestion that a parole search will automatically be invalidated simply because the officer fails to ask the nonparolee roommate whether the object about to be searched is his or her property. Such a rigid rule would unnecessarily bind the officer to the answer given, regardless of its veracity. The officer should not be bound by the reply in the face of overwhelming evidence of its falsity. Even if the nonparolee roommate's claim of ownership sounds reasonable, reasonable suspicion may be predicated on the parolee's possession or control of the object. The officer must reasonably suspect that the object is owned, controlled or possessed by the parolee for the search to be valid. Depending upon the facts involved, there may be instances where an officer's failure to inquire, coupled with all of the other relevant facts, would render the suspicion unreasonable and the search invalid.[3] However, this is not such a case.

E. *The officers reasonably suspected that the handbag was owned, controlled, or possessed by a parolee; therefore, it was within the scope of the parole search.*

In denying the suppression motion in the instant case, the superior court referred to a lesser expectation of privacy because appellant spent the night with parolee Mitchell in parolee Santos's trailer. Similar observations have been made in other parole search cases. ■ "We have no doubt that the fact that a parolee is married and is living with his wife will not prevent the parole officer from searching his premises without a warrant when there is reasonable cause to believe that he has violated his parole; the wife will then be in no position to complain of violation of her right to privacy, which because of her living with a parolee subject to special rules of supervision, must be to some extent restricted in the public interest. We see no reason why the same should not apply to the woman who lives with a parolee as if they were a married couple, . . ." (*People* v. *Triche* (1957) 148 Cal.App.2d 198, 203 [306 P.2d 616].)

■ The Supreme Court later articulated the standard as reasonable suspicion. "[T]he appropriate standard of reasonableness to justify a parole

[3] See *People* v. *Icenogle, supra,* 71 Cal.App.3d 576, 582-585.

search is a *reasonable suspicion* . . . . That suspicion must of course be based on articulable facts which together with rational inferences from those facts warrant objectively reasonable suspicion." (*People* v. *Burgener*, *supra*, 41 Cal.3d at p. 535, italics added.)

The reasonable suspicion standard should also be used to determine whether a particular object is within the scope of the parole search being conducted. Its application avoids unreasonable intrusions into the privacy interests of persons with whom the parolee associates or resides. The public policy considerations that led the Supreme Court in *Burgener* to require reasonable suspicion to justify a parole search also apply in defining its scope.

■ In assessing the scope of this parole search, we first review the evidence supporting the order denying the suppression motion. Parole Agent Wetmore initiated the search of Santos's residence after observing his vehicle in front of a house known for drug use and sales, hearing Santos's ex-wife's allegations about drug use and knife threats, and receiving information that Mitchell was dealing methamphetamines and associating with Santos. Wetmore thought Mitchell might be staying with Santos because Mitchell was evasive when asked for his residence address. Agent Wetmore informed his search team that Santos and Mitchell were suspected of methamphetamine use and sales and that Mitchell might be with Santos. The trailer was recognized by Wetmore and Spangard as a former abode of Santos, and it was parked adjacent to his house.

Spangard and Evans approached the trailer to conduct a parole search of property owned or controlled by Santos. Mitchell and appellant were observed in the trailer, and Mitchell was recognized as being subject to a parole search of any property in his possession or under his control. As in *Palmquist* and *Britton*, Evans was searching an area under the joint control of at least one parolee (possibly two) and a nonparolee.

Agent Evans discovered the gender neutral handbag on the bed, partially covered by a pillow. There was only one bed in the trailer and it appeared to have recently been jointly occupied by Mitchell and appellant. Agent Evans suspected the handbag was owned or controlled by one or both of the parolees. He testified that it was his experience for men to keep methamphetamine or other drugs in such a bag, and the purpose of the search was to determine if the two parolees were using or dealing with methamphetamine.

Our independent application of the appropriate standard to the evidence presented leads us to conclude that the officers had reasonable suspicion

that the handbag was owned or controlled by one or both of the parolees and was therefore within the scope of the parole search. (*People* v. *Williams, supra,* 45 Cal.3d at p. 1301.) Their subjective suspicion was "based on articulable facts which together with rational inferences from those facts warrant objectively reasonable suspicion." (*People* v. *Burgener, supra,* 41 Cal.3d at p. 535.) The court did not err in denying appellant's motion to suppress the handbag and contraband within.

DISPOSITION

The judgment is affirmed.

Dibiaso, J., and Pettitt, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.