Michael HARRISON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–4338.

Court of Appeals of Alaska.

Oct. 15, 1993.

Randall Cavanaugh, Kirk, Robinson & Cavanaugh, Anchorage, for appellant.

James L. Hanley, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Michael Harrison entered a plea of no contest to one count of misconduct involving a controlled substance in the fourth degree (possession of cocaine), reserving the right to appeal Superior Court Judge Beverly J. Cutler's denial of his motion to suppress evidence that resulted from a

warrantless entry of Harrison's home by the Alaska State Troopers. Prior to sentencing, Harrison moved to withdraw his no contest plea. Following an evidentiary hearing, Superior Court Judge James A. Hanson denied the motion and subsequently entered judgment against Harrison. Harrison appeals, challenging Judge Cutler's denial of the suppression motion and Judge Hanson's denial of the motion to withdraw. We affirm in part and remand in part for further findings.

## DENIAL OF SUPPRESSION MOTION

On December 7, 1990, Alaska State Trooper Rae Arno went to Harrison's cabin in Sutton to serve a misdemeanor arrest warrant. As Arno pulled into the driveway, she saw somebody through the cabin's picture window at the kitchen table approximately ten feet from the window. Although Arno could not identify the person, she believed that he was Harrison. She recalled her thoughts:

> I had no idea what was going on. The person could have been asleep or passed out or dead. I had no idea. They were just face down on the kitchen table with their—with his head on his arms.

Arno left her patrol car, walked to the front door, and "[p]ounded pretty hard" on the door to try to awaken Harrison. Although the front door was only a short distance from Harrison, he did not respond. Arno then walked a short distance across the front yard to the picture window and "just pounded on the window and absolutely nothing happened." The trooper became concerned about Harrison's welfare and believed he might not be just asleep. Arno went back to the front door and pounded with her flashlight, but there was no response. She returned to pound on the window a second time; still Harrison did not respond. "He didn't so much as wiggle. Didn't even stir."

Arno could not see whether Harrison was breathing. She decided to enter the house to make sure that Harrison was alright:

> I had—I was wondering what was the matter with him. I didn't know—have any idea what could possibly be the matter with him, and I was—I was concerned that he—that he may have—he may have been injured if there was a fight at the house. He could have a medical problem. He could be dying. He could be dead. It could be a whole host of things that could have been a problem with him not responding.

Arno opened the front door and yelled; hearing no response, she entered cautiously and walked slowly toward Harrison, calling out to him the entire time. Still, the trooper saw no reaction.

When Arno reached Harrison, she pushed on his shoulder and called out to him; Harrison did not respond. Arno saw what appeared to be drugs all around Harrison on the kitchen table: a mirror with white powder residue on it; a "tooter" used to snort cocaine; an ashtray with what appeared to be a marijuana cigarette butt in it; a small plastic baggie with a very small amount of a green leafy substance in it; what she believed to be cocaine residue "at the table all around his head"; and empty beer cans.

Although still very concerned about a medical problem, perhaps a drug overdose, Arno could see that there was "no severe trauma and he was breathing," so she "knew it wasn't an exigent medical circumstance." While she "didn't rule out medical emergency, [she thought that] it wasn't going to be anything that he was going to die from real soon." Arno left the cabin and summoned another trooper. Arno and the other trooper reentered the cabin and placed Harrison in custody. Based on Arno's observations, the troopers subsequently obtained and executed a search warrant for Harrison's cabin. The warrant yielded the cocaine that Harrison was charged with possessing.

In denying Harrison's motion to suppress, Judge Cutler ruled that Arno's initial

warrantless entry of the cabin was justified under the emergency aid doctrine. Harrison challenges this ruling on appeal, arguing that Arno lacked sufficient certainty that an emergency existed, since the trooper believed only that Harrison "may have been injured" and that "he could have a medical problem."

■ A warrantless entry by police into a person's home is *per se* unreasonable and violative of the state and federal constitutions unless it falls within one of the limited exceptions to the warrant requirement. *Payton v. New York*, 445 U.S. 573, 586, 589–90, 100 S.Ct. 1371, 1380, 1381–82, 63 L.Ed.2d 639 (1980); *Johnson v. State*, 662 P.2d 981, 984 (Alaska App.1983).

■ The emergency aid doctrine is a well recognized exception to the warrant requirement. *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978); *Schraff v. State*, 544 P.2d 834, 841 (Alaska 1975); *Gallmeyer v. State*, 640 P.2d 837, 841 (Alaska App.1982). "Under the doctrine, the warrantless entry of a dwelling is allowed when an officer has reasonable grounds to believe that there is an immediate need to take action to prevent death or to protect persons or property from serious injury." *Williams v. State*, 823 P.2d 1, 3 (Alaska App.1991) (citing *Gallmeyer*, 640 P.2d at 841–43).

■ Three conditions must be met for the emergency aid doctrine to apply:

(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.

(2) The search must not be primarily motivated by intent to arrest and seize evidence.

(3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

*Gallmeyer*, 640 P.2d at 842.

"[T]he existence of an emergency must be determined by an objective standard— whether the evidence would have led a prudent and reasonable officer to perceive an immediate need to take action in order to prevent death or to protect against serious injury to persons or property." *Id.* As in all situations involving exceptions to the warrant requirement, the standard is not one of certainty but of probable cause: "[T]he criterion is the reasonableness of the belief of the police as to the existence of an emergency, not the existence of an emergency in fact." *Id.* at 844 (quoting *Patrick v. Delaware*, 227 A.2d 486, 489 (Del.1967)).

■ As we have previously noted, "courts and commentators alike have agreed that officers must be allowed a broad scope of judgment in the precise manner of dealing with emergency situations." *Gallmeyer*, 640 P.2d at 845 (citations omitted). Here, because Arno acted under circumstances requiring "a prompt assessment of ... ambiguous information concerning potentially serious consequences," 2 Wayne R. LaFave, *Search & Seizure* § 6.6(a) at 698 (1987), her actions "should not be reviewed with severe judicial scrutiny in light of a hindsight analysis of the evidence." *State v. Jones*, 45 Or. App. 617, 608 P.2d 1220, 1222 (1980).

■ Having reviewed the evidence presented at the evidentiary hearing on Harrison's motion to suppress, we are convinced that Judge Cutler could properly find that Arno's entry of the cabin was not pretextual and was based on probable cause. Arno had ample reason to believe that an emergency existed and that there appeared to be an immediate threat to Harrison's welfare. Judge Cutler did not err in denying Harrison's motion to suppress.[1]

## DENIAL OF MOTION TO WITHDRAW PLEA

Prior to sentencing, Harrison secured a new attorney and moved to withdraw his

---

1. Harrison argues on appeal that, even if Arno's initial warrantless intrusion was justified under the emergency aid doctrine, her second warrantless entry of the cabin—during which Arno

plea of no contest, claiming that he had entered it without adequately understanding his possible defenses. Harrison claimed that he would not have entered his no contest plea had he known that the concept of constructive possession required proof that he actually exercised dominion and control over the cocaine. Harrison testified that he told his first attorney that the drugs seized by the troopers belonged to someone who had attended a party there the day of Arno's visit. Harrison testified that his attorney did not discuss the concept of possession, saying only that "it [the cocaine] was in my house so it's my—my problem I guess."

Harrison also expressed dissatisfaction with his first attorney's handling of the case in other respects, claiming that his attorney did not properly follow up on Harrison's claim that the drugs belonged to someone else. Harrison further claimed that he had not understood Judge Cutler's questions during the change of plea hearing.

At the evidentiary hearing on Harrison's motion to withdraw his plea, Harrison's first attorney testified that he had discussed the concept of possession with Harrison, albeit only during a rather brief conversation that occurred after the motion to suppress was denied. Harrison's attorney stated that, during the discussion, he explained the issue of possession to Harrison in the context of the case and advised Harrison that a trial would be "an extremely uphill battle," because Harrison's fingerprints had been found on a number of articles of drug paraphernalia:

> I just told Mr. Harrison—I go, look, your fingerprints are all over this parapherna-

lia, I—I think they—they have a real strong case, and I think you're simply going to lose. And—and that was it. You know, it was your place, you know, cocaine was there, it was on the table, your fingerprints are on the stuff, I think you're going to lose. And, you know, and if—if indeed there were other people there that were using cocaine, and it's your place and you allowed it to happen, you allowed the stuff to be there, I felt that he would be convicted under the dominion and control angle. And I—and I conveyed that to him. If I'm wrong on the law there, so be it. But that's—that's how I conveyed it.

Harrison's attorney was "90 percent sure" that he explained actual versus constructive possession to Harrison. According to the attorney, he advised against a trial; Harrison, while not "thrilled about foregoing a trial," agreed.

In opposing Harrison's withdrawal motion, the state argued that in order to withdraw his plea, Harrison was required to establish that his former counsel's representation had been ineffective. The state maintained that "[o]nly if there's ineffective assistance of counsel is there a fair and just reason for withdrawal of a plea."

The hearing on Harrison's motion to withdraw his plea was conducted before Judge Hanson, who took the motion under advisement and later issued a summary order denying it. Harrison challenges Judge Hanson's ruling.

█ Plea withdrawal is governed by Alaska Criminal Rule 11(h).[2] Under the express terms of Rule 11(h)(2), because

---

and another Trooper placed Harrison in custody—was unlawful. However, Harrison has failed to allege or establish any causal connection between the second entry and issuance of the search warrant that resulted in the seizure of the cocaine Harrison was charged with possessing. Nor has Harrison specified any evidence that was obtained in the course of the second entry rather than the first. Because it appears that the search warrant was based exclusively on information Arno discovered dur-

ing the initial entry, the warrant would not be a fruit of the poisonous tree, even if the second entry were unjustified. Under the circumstances, we need not consider the legality of the second warrantless entry.

**2.** Alaska Criminal Rule 11(h) provides, in pertinent part:

(h) **Plea Withdrawal.**
(1) The court shall allow the defendant to withdraw his plea of guilty or nolo contendere

Harrison moved to withdraw his plea prior to sentencing, he was not required to establish manifest injustice; rather the superior court was authorized to grant the motion "for any fair and just reason." *Id.* When, as in this case, the state makes no showing of potential prejudice, pretrial motions for plea withdrawal should be liberally granted. *Ningealook v. State,* 691 P.2d 1053, 1055 (Alaska App.1984); *Travelstead v. State,* 689 P.2d 494, 497 (Alaska App.1984); *Love v. State,* 630 P.2d 21, 24 (Alaska App.1981).

Under Criminal Rule 11(h)(1)(ii)(aa), proof by Harrison that his counsel had actually rendered ineffective assistance would have amounted to proof of manifest injustice entitling Harrison to withdraw his plea as a matter of right. But even in the absence of a showing of ineffective assistance of counsel, the superior court had broad discretion to find a "fair and just reason" to allow withdrawal of Harrison's plea if it accepted Harrison's basic assertion that, in initially deciding to plead no contest, he was confused—for whatever reason—as to the legal definition of possession and the scope of his potential defenses. Conversely, if the court rejected Harrison's testimony in its entirety, concluding that Harrison had simply changed his mind or was attempting to manipulate the system, it would have been justified in finding that Harrison had failed to show a fair and just reason to withdraw his plea. *Wahl v. State,* 691 P.2d 1048, 1053 (Alaska App. 1984).

In the absence of express findings, we would ordinarily presume that, in denying Harrison's motion to withdraw, the superior court simply resolved issues of credibility against him and reached precisely this latter conclusion. In the procedural setting of this case, however, we are convinced that reliance on the usual presumption would be inappropriate.

■ Here, the state mistakenly argued that withdrawal would be warranted only if Harrison actually proved ineffective assistance of counsel. By making this argument, the state effectively urged Judge Hanson to base his ruling on the "manifest injustice" standard. Because the state argued an inappropriate legal standard and the superior court made no express findings, it is impossible for us to determine what standard Judge Hanson actually applied. Under these circumstances, the usual presumption becomes unreliable, for "if the trial court's decision ... was the result of ... an incorrect application of the law, the inevitable effect of incorrectly presuming that the basic facts were decided in favor of the State would be to insulate the court's error from detection on appeal." *Johnson v. State,* 631 P.2d 508, 511 (Alaska App.1981).

We therefore find it necessary to remand this case to the superior court for further consideration of Harrison's motion to withdraw his plea. If the court's original order denying the motion to withdraw was based on the conclusion that Harrison's testimony was not credible and that Harrison had failed to establish any fair and just reason for withdrawal, the court should enter express findings to that effect. On the other hand, if the court based its ruling solely on

whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct manifest injustice.

. . . .

(ii) Withdrawal is necessary to correct a manifest injustice whenever it is demonstrated that:

(aa) The defendant was denied the effective assistance of counsel guaranteed by constitution, statute or rule, or

. . . .

(cc) The plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed, or

. . . .

(2) Once the plea has been accepted by the court and absent a showing that withdrawal is necessary to correct a manifest injustice, a defendant may not withdraw a plea of guilty or nolo contendere as a matter of right. Before sentence, the court in its discretion may allow the defendant to withdraw a plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.

the conclusion that Harrison failed to establish ineffective assistance of counsel, the court should reconsider its original ruling, applying the "any fair and just reason" legal standard. We retain jurisdiction over this appeal pending completion of proceedings on remand.

The order denying Harrison's motion to suppress is AFFIRMED. This case is REMANDED for further consideration of Harrison's motion to withdraw his plea.