**John W. MILTON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–4958.**

Court of Appeals of Alaska.

Sept. 2, 1994.

Lynn E. Levengood, Downes, MacDonald & Levengood, P.C., Fairbanks, for appellant.

James L. Hanley, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

COATS, Judge.

John W. Milton was convicted of misconduct involving a controlled substance in the third degree, a class B felony, for possessing cocaine with the intent to deliver. AS 11.71.-030(a)(1). He was also convicted of possession of cocaine, a class C felony. AS 11.71.-040(a)(3)(A). Milton appeals, contending that Superior Court Judge Richard D. Savell erred in denying his motion to suppress the cocaine the state had used to convict him of the class B felony offense. Milton's appeal raises questions concerning the privacy rights of a third-party custodian—the right of a person who has a probationer released into his custody and has that probationer living in his residence, to a reasonable expectation of privacy in his residence from a search directed by the probationer's probation officer.

In March of 1992, Jesus F. Gutierrez was on probation as a result of a previous conviction involving the sale of cocaine. Gutierrez evidently did not comply with the conditions of his probation and was ordered to appear for revocation proceedings scheduled the week of March 30, 1992. Gutierrez failed to appear and was subsequently arrested pursuant to a warrant on August 5, 1992.

Gutierrez was held without bail and, at a hearing on August 14, 1992, sought to be released into the third-party custody of his long-time friend, John W. Milton. At this

hearing, Milton testified that he lived alone, had known Gutierrez since 1982, and was willing to permit Gutierrez to reside with him even though he knew that Gutierrez had violated probation. The state opposed the third-party arrangement and urged the court to order that Gutierrez continue to be held without bail.

The court set Gutierrez's bond at $1,000 and ordered that, should the bond be posted, Gutierrez would be released into Milton's custody. As conditions of release, the court ordered that Gutierrez not use or possess any illegal drugs or alcohol. The court stated that Gutierrez was to remain subject to the "terms and conditions of probation." The court told Milton that he was obligated to report any perceived probation violations to Gutierrez's probation officer. The court also informed Milton that he could be held in contempt if he failed to report such violations. Milton accepted these terms and secured Gutierrez's release by posting the prescribed bond.

Probation Officer Donald H. Allen supervised Gutierrez following his release into Milton's custody. As a condition of probation, Gutierrez was required, upon request of a probation officer, to submit to a search of his residence for the presence of contraband. Allen met with Gutierrez approximately three days per week. Based upon these contacts, as well as information Allen had received from the Alaska State Troopers, Allen suspected that Gutierrez was using and possibly selling cocaine. Allen informed Gutierrez that his residence would be searched immediately because reasonable grounds existed to believe that Gutierrez "was either using or distributing drugs."

Allen and Gutierrez went to Milton's apartment where Gutierrez had been residing. They were accompanied by Probation Officer Ronald Murray and Alaska State Troopers Michael Stickler and Nathan Sheets. Murray used Gutierrez's key to open the apartment door. The officers entered the apartment and observed Milton sitting on the couch in the living room. Under Allen's direction, Milton and Gutierrez seated themselves at the dining room table while the other officers made a protective sweep of the entire apartment to determine that no others were present inside. At some point, Allen noticed traces of white powder on a coffee table in the living room and alerted Sheets to this discovery.

Following the protective sweep, the officers undertook an extensive search of the apartment while Allen continued to observe Milton and Gutierrez. Trooper Stickler first searched the bathroom where he found a bottle of inositol—a cutting agent for cocaine—on the counter and a recently-washed plastic baggie in the trash can. At approximately the same time, Murray began searching Gutierrez's bedroom and Sheets began searching Milton's bedroom. Stickler reported his findings to Allen and then assisted Sheets in searching Milton's bedroom.

Upon entering Milton's bedroom, Stickler and Sheets discovered letters and bills on a night stand, some addressed to Milton and at least one addressed to Gutierrez. Stickler also discovered traces of white powder on the night stand, but could not recover enough of the powder to conduct a field test. These discoveries were relayed to Allen, who, at some point, exchanged assignments with Sheets and apparently assisted Stickler in completing the search of Milton's bedroom.

Stickler entered Milton's walk-in closet where he noticed a black nylon suitcase sitting on the floor. Stickler searched the suitcase. As he removed items of clothing and rain gear, Stickler found a clear plastic bag containing approximately two ounces of a substance that field tested positive for cocaine. Milton was then placed under arrest and advised of his rights. This cocaine was the basis for the state's charge that Milton possessed cocaine with the intent to distribute. Stickler then proceeded to Gutierrez's bedroom where a search was underway.

While searching Gutierrez's room, the officers discovered a receipt for a pager that Milton had apparently rented. Inside the closet, Murray found a plastic bag containing a white material that he believed to be a cutting agent. Officers also discovered traces of cocaine on top of the dresser and assorted papers bearing the names of both Gutierrez and Milton. A used syringe was

found under Gutierrez's mattress. The officers also searched the kitchen area where they found an electronic scale and paper they suspected had been used in packaging cocaine.

After relieving Allen, Sheets kept watch over Gutierrez and Milton as other officers finished searching the apartment. After the search was completed, Sheets performed a field test. The results indicated that the substance on the coffee table contained cocaine.

Milton and Gutierrez were transported to the Fairbanks Correctional Center for booking. A corrections officer completed an inventory of Milton's personal property and discovered $1,794 in cash and .27 grams of cocaine in Milton's wallet. The state based the possession charge on the cocaine found in Milton's wallet.

Before trial, Milton moved to suppress all evidence resulting from the search of his apartment. Milton conceded that the probation officers had the authority to search Gutierrez and Gutierrez's living area without a warrant. Milton argued, however, that expanding the warrantless search into his private bedroom was unlawful. The state argued that Milton had no reasonable expectation of privacy in his residence because Milton had allowed Gutierrez to live with him knowing full well that Gutierrez's residence was subject to warrantless searches by probation officers.

Following an evidentiary hearing, Judge Savell denied Milton's motion. Judge Savell noted that it was not disputed that the probation officers had a reasonable basis and legal authority to search Gutierrez's residence. He found that the court had previously advised Milton of his duties as a third-party custodian and that Milton, therefore, knew or should have known that the place where Gutierrez resided would be subject to search. He also found that Gutierrez had access to the entire apartment. Judge Savell concluded that since Gutierrez had access to Milton's bedroom, Milton had no reasonable expectation of privacy in the bedroom.

■ In general, "a warrantless entry by police into a person's home is *per se* unreasonable and violative of the state and federal constitutions unless it falls within one of the limited exceptions to the warrant requirement." *Harrison v. State*, 860 P.2d 1280, 1283 (Alaska App.1993) (citations omitted). A search by a probation officer of a probationer's residence is a recognized exception to the warrant requirement as long as the search has been authorized by the conditions of probation or release, the search is conducted by or at the direction of probation authorities, and the search bears a direct relationship to the nature of the crime for which the probationer was convicted. *See Griffin v. Wisconsin*, 483 U.S. 868, 880, 107 S.Ct. 3164, 3172, 97 L.Ed.2d 709 (1987); *Soroka v. State*, 598 P.2d 69, 71 nn. 5 & 8 (Alaska 1979); *Roman v. State*, 570 P.2d 1235, 1243 (Alaska 1977).

■ While it is undisputed that the probation officers had authority to search Gutierrez's residence, the issue here is the proper scope of that search. Where the probationer is sharing living quarters with another person who is not subject to similar conditions, it seems clear that the probation officer and people working under his direction may search all parts of the premises that the probationer has common authority to use. 4 Wayne R. LaFave, *Search & Seizure* § 10.10 n. 70.1 (2d ed. Supp.1990).[1] However, courts have recognized that a person who is living with a probationer retains a reasonable expectation of privacy in the residence and in his personal possessions. In *United States v. Davis*, 932 F.2d 752, 758 (9th Cir.1991), the court limited the scope of a warrantless probationer search, holding that the searching officer "must have reasonable suspicion, that an item to be searched is owned, controlled, or possessed by a probationer, in order for

---

1. In *State v. Johnson,* 748 P.2d 1069 (Utah 1987), the court said:
 A warrantless search of a parolee may result in an invasion of privacy, at least to some extent, for those living with the parolee. If the Fourth Amendment rights of nonparolees living with

parolees were not reduced, a parolee could avoid all warrantless parole searches by living with a nonparolee and asserting the nonparolee's constitutional rights, and thus emasculate one significant feature of the parole system. *Id.* at 1073 (footnote and citations omitted).

the item to fall within the permissible bounds of a probation search." In *People v. Boyd,* 224 Cal.App.3d 736, 274 Cal.Rptr. 100 (1990), the court stated:

> [W]here police officers do not know who owns or possesses a residence or item and such information can be easily ascertained, it is incumbent upon them to attempt to ascertain ownership in order to protect the privacy interest of both probationer and nonprobationer. If it is objectively unreasonable for officers to believe that the residence or item falls within the scope of a search condition, any evidence seized will be deemed the product of a warrantless search absent other considerations. Whether the officer's belief is objectively reasonable would usually be a factual question to be resolved by the court hearing the suppression motion.

*Id.* 274 Cal.Rptr. at 107 (quoting *People v. Tidalgo,* 123 Cal.App.3d 301, 176 Cal.Rptr. 463, 466 (1981)) (citations and footnote omitted).

In *Boyd,* the court went on to explain that whether actions were objectively reasonable in a parole or probation search was a factual matter not subject to rigid rules:

> Moreover, we reject any suggestion that a parole search will automatically be invalidated simply because the officer fails to ask the nonparolee roommate whether the object about to be searched is his or her property. Such a rigid rule would unnecessarily bind the officer to the answer given, regardless of its veracity. The officer should not be bound by the reply in the face of the overwhelming evidence of its falsity. Even if the nonparolee roommate's claim of ownership sounds reasonable, reasonable suspicion may be predicated on the parolee's possession or control of the object. The officer must reasonably suspect that the object is owned, controlled or possessed by the parolee for the search to be valid. Depending upon the facts involved, there may be instances where an officer's failure to inquire, coupled with all of the other relevant facts, would render the suspicion unreasonable and the search invalid.

*Boyd,* 274 Cal.Rptr. at 108 (footnote omitted).

■ We first turn to Judge Savell's finding that because Milton knew or should reasonably have known that Gutierrez's probation officer was authorized to search any house Gutierrez resided in, Milton waived his right to object to the search of his residence when he agreed to act as Gutierrez's third-party custodian. Judge Savell's ruling turns on a question of law, not a question of fact. As a factual matter, Milton never explicitly waived his right to privacy, nor did he ever explicitly consent to searches of his home by Gutierrez's probation officer. Milton did explicitly agree to house Gutierrez and be his custodian pending the probation revocation hearing. Judge Savell ruled that, as a matter of law, Milton's agreement to house Gutierrez (knowing that he was a probationer whose residence was subject to search) amounted to a waiver by Milton of his right to object to searches by Gutierrez's probation officer.

As discussed above, the law is otherwise. Courts generally hold that a person who agrees to house a probationer retains a limited expectation of privacy in his person, possessions, and residence. This expectation of privacy is limited because the probation officer is entitled to search the probationer, the probationer's possessions, and the probationer's residence. In the case of a shared residence, the probation officer's search may extend to all areas of the residence over which the probationer has control, even if that control is not exclusive. This includes common areas of the residence. Therefore, the probation officer may search areas of the house and items of property within the house to the extent that the officer has reason to believe that the area or item searched is owned, possessed, or controlled by the probationer—even if it later turns out that the area or item searched was in the exclusive possession of the homeowner.

By agreeing to house Gutierrez, Milton gave up his right to object to a search of these dimensions, but he retained his right to object to a search that exceeded these dimen-

sions.[2] Milton could therefore seek suppression of evidence found during a search that exceeded the limits outlined in the previous paragraph.

 We also disagree with Judge Savell's alternative finding that Milton had no legitimate expectation of privacy in his individual bedroom, bedroom closet, and suitcase because these areas were "kept open" so as to be physically "accessible" to Gutierrez. The fact that the probationer may be physically capable of gaining access to areas or items within the house is not decisive when determining the scope of the authorized search. A boarder or a guest may be physically capable of invading any space within the house, or of obtaining physical access to any item within it, without the knowledge of the householder.[3] If the law allowed a probation officer to search any area or item that the probationer might have gained access to, practically everything within the house would be subject to search. Such a result is contrary to the established law in this area, which requires that the probation officer have a reasonable suspicion that the area or item to be searched is within the "ownership, possession, or control of the probationer." *United States v. Davis,* 932 F.2d 752, 760 (9th Cir.1991); *People v. Boyd,* 224 Cal. App.3d 736, 274 Cal.Rptr. 100, 108 (1990). *See also* 3 Wayne R. LaFave, *Search and Seizure* §§ 8.3(f) and (g) (2d ed. 1987) (discussing the authority of a third party to consent to searches of a shared premises, and distinguishing areas of "joint access" from areas of "exclusive control").

We therefore vacate Judge Savell's ruling on Milton's suppression motion, and remand this case to the superior court for reconsideration of that motion based upon the law stated in this opinion.[4] On remand, Judge Savell may, in his discretion, allow the parties to present further evidence.

REMANDED.

2. Milton never expressly agreed to a greater waiver of his right of privacy as a condition of having Gutierrez placed in his custody. We express no opinion as to the validity of such a waiver.

3. Our decision addresses only Milton's right to seek suppression. We do not suggest that a probationer would have standing to object to an invasion of the householder's privacy.

4. Milton contends that if the search of his suitcase was illegal, then his later arrest was illegal and the cocaine that the correctional officer found during an inventory of his personal property should be suppressed as a product of the original illegal search. However, because Milton did not prevail in the trial court on his claim that the search of the suitcase was illegal, the trial court has never directly decided what evidence should be suppressed as a result of the search of the suitcase in the event that the search of the suitcase is found to have been illegal. *See Cruse v. State,* 584 P.2d 1141, 1146 (Alaska 1978). We therefore do not decide this issue. In the event the trial court determines on remand that the evidence found in Milton's house should be suppressed, then the trial court should decide whether the evidence which was seized at the jail was a product of the illegally seized evidence.