Robert D. EWERS, Appellant,

v.

STATE of Alaska, Appellee.

No. A-3547.

Court of Appeals of Alaska.

Jan. 19, 1996.

James W. McGowan, Sitka, for Appellant.

James L. Hanley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

After a bench trial conducted before Superior Court Judge Thomas E. Schulz, Robert D. Ewers was convicted in May 1990 of misconduct involving weapons in the first degree (knowing possession of a concealable weapon by a felon). AS 11.61.200(a)(1). Ewers appealed, but fled the state shortly thereafter; this court dismissed his appeal in October 1990. Almost two and one-half years later, in February 1993, Ewers was arrested out of state and extradited to Alaska. Upon returning, he petitioned this court to reinstate his appeal. We ordered the appeal reinstated. We now affirm.[1]

In March 1988, Gerald O. Gwillim contacted Alaska State Trooper Richard Roberts. Gwillim said that in August of the previous year, Ewers had given Gwillim a Smith and Wesson pistol to keep for him, because, as a felon, Ewers was not allowed to have a concealable firearm. Gwillim turned the gun over to Roberts.

Upon receiving the gun from Gwillim, Roberts performed a records check and learned that it had been reported stolen the previous summer. He then decided to take the gun to Ewers, who was living aboard a fishing boat. Sometime around midnight, Roberts went to the boat. He was in uniform. Roberts described the encounter as follows:

I went on the boat and knocked on the door to the boat. It was dark inside. I waited for a minute or so, but no one answered. I then opened the door about 3–4 inches and asked if anyone was there. I saw a man, who was awakened in a bunk near the door, and he said "yeah." I identified myself as a State Trooper and said that I need to talk. He turned on a light. . . . I said that I needed to talk to Bob Ewers. He called "Bob" and I heard a response of "yeah." The man in the bunk then said something like "someone here to see you, State Trooper." I stepped into the door way.

The Defendant [Ewers] came up out of the bow of the boat. He says "yeah, what's up." I asked the Defendant if I could step in out of the weather. I said that Mr. Gwillim had property he wished returned to the Defendant but Mr. Gwillim did not want to face the Defendant personally. I also advised the Defendant that I was responsible for his arrest in Anchor-

---

1. Our order reinstating Ewers' appeal was entered in accordance with *White v. State,* 514 P.2d 814 (Alaska 1973). There, White absconded from custody following his sentencing; his appeal was dismissed. The supreme court reinstated the appeal after White was returned to custody. *Id.* at 814–15. In so doing, the court held that the right to a criminal appeal can be lost only through knowing and voluntary waiver clearly established by the state, and cannot be forfeited. *Id.* at 815. The court further found that, absent a showing of prejudice to the state, the existence of potentially meritorious grounds for appeal amounted to good cause for reinstatement. *Id.* at 816.

While acknowledging that *White* requires reinstatement of Ewers' right to appeal his conviction, the state urges us not to reach the merits of Ewers' claims, since they involve only the exclusionary rule and do not go to the fairness of Ewers' conviction. Given the straightforward nature of Ewers' case, Judges Coats and Mannheimer prefer to decide this case on its merits; they express no view on the state's procedural

argument. For the following reason, however, the author of this decision would affirm without deciding the merits.

Implicit in the supreme court's disposition in *White* is its recognition that the accused may suffer substantial prejudice from an appellate court's refusal to review potentially meritorious claims implicating the fairness of a conviction or sentence. But absent exceptional circumstances, claims such as the ones Ewers asserts here—search and seizure arguments and purported *Miranda* violations—implicate neither the fairness of a conviction nor the fairness of a sentence. An appellate court's refusal to decide the merits of such claims based on a procedural default ordinarily poses no danger of substantial prejudice to the accused. *Cf. Moreau v. State,* 588 P.2d 275, 279–80 (Alaska 1978). Thus, in an appeal reinstated, pursuant to *White,* solely on the basis of potentially meritorious issues and an apparent absence of prejudice to the state, review on the merits should ordinarily be denied as to claims involving the exclusionary rule that have no bearing on the fairness of the conviction or sentence.

age the year before and that I had a handgun to return to the Defendant if it belonged to him. The Defendant said, "Yeah, come in," and asked me if I wanted coffee. I declined the offer for coffee. The galley is located near the door I had just entered, and so the Defendant turned a light on over the table. He asked me to sit at the table, and so the Defendant and I then sat down.

Without reading Ewers his *Miranda* rights, Roberts proceeded to converse with him about the gun. During the conversation, Ewers admitted he had bought the gun the previous summer, and had left it with Gwillim. Following this admission, Roberts arrested Ewers for being a felon in possession of a concealable firearm and for theft (for receiving the stolen gun).

Before trial, Ewers moved to suppress the statements he made on the boat. Ewers argued that Roberts' warrantless entry of the boat violated the Fourth Amendment and that the officer's failure to read him the *Miranda* warnings violated the Fifth Amendment. Judge Schulz rejected both arguments. As to the Fourth Amendment claim, Judge Schulz concluded that, even if Roberts' warrantless entry of the boat was unlawful, the illegality "was cured when Ewers came up from the fo'c'sle and either at the table or by the back door invited the officer to sit down and have a cup of coffee and talked to him." As to the Fifth Amendment claim, the judge found that Ewers was not in custody when Roberts questioned him on the boat.

The judge subsequently found Ewers guilty on the felon in possession charge; the state dismissed the theft charge. On appeal, Ewers renews the unlawful search and *Miranda* arguments he raised below. Neither argument requires extensive discussion.

■ For purposes of deciding Ewers' Fourth Amendment claim, we assume, as seems to be the case, that Roberts' initial warrantless entry of the boat was unlawful. *See, e.g., Milton v. State,* 879 P.2d 1031, 1034 (Alaska App.1994) ("[A] warrantless entry by police into a person's house is *per se* unreasonable and violative of the state and federal constitutions unless it falls within one of the limited exceptions to the warrant require-

ment." (citing *Harrison v. State,* 860 P.2d 1280, 1283 (Alaska App.1993))). Evidence Roberts obtained as a result of his unlawful entry would thus be inadmissible unless it fell under an exception to the warrant requirement. *See Milton,* 879 P.2d at 1034.

■ Here, however, the record supports the conclusion that Ewers' statements were not the fruits of Roberts' unlawful entry. As Judge Schulz correctly recognized, the taint of an unlawful entry may be dissipated by a subsequent, voluntary consent. As the Alaska Supreme Court said in *Robinson v. State,* 578 P.2d 141, 144 (Alaska 1978) (footnote omitted), "there are circumstances in which an authorized person's valid consent to police presence could supersede an initial" illegal entry.

In the present case, Judge Schulz found that, after Roberts' initial unauthorized entry, Ewers expressly agreed to speak with Roberts and invited the officer to be seated and have some coffee. The trial court's factual findings are reversible only for clear error. *Fox v. State,* 825 P.2d 938, 939 (Alaska App.1992) (citing *State v. Bianchi,* 761 P.2d 127, 129 (Alaska App.1988)). This finding is not clearly erroneous.

Judge Schulz's factual finding supports his conclusion that Ewers' consent to Roberts' presence aboard the vessel was freely and voluntarily given. We find nothing in the record suggesting that Roberts' initial unauthorized entry had any impact on the voluntariness of Ewers' subsequent consent—indeed, when he invited Officer Roberts to sit down and have a cup of coffee, Ewers appears to have had no way of even knowing how the officer had come aboard. Given these circumstances, Judge Schulz properly found that, assuming an unlawful entry by Roberts, Ewers' statements were in no meaningful sense the product of the illegality.

■ We next consider Ewers' *Miranda* argument. *Miranda* warnings are required only when questioning is custodial—that is, only when "police actions would lead a reasonable defendant to believe that he would not be allowed to leave or otherwise termi-

nate the police contact." *G.R. v. State*, 638 P.2d 191, 198 (Alaska App.1981) (citing *Hunter v. State*, 590 P.2d 888, 895 (Alaska 1979)). Here, Judge Schulz was aware of the proper standard and of the factors relevant to a determination of custody, as set forth in *Hunter*. After considering the totality of the evidence, the judge found that Ewers was not in custody when interviewed aboard his vessel. Our independent review of the record convinces us that the trial court correctly determined that the interview was noncusto-dial and that *Miranda* warnings were accordingly not required. *Cf. G.R. v. State*, 638 P.2d at 198; *Doyle v. State*, 633 P.2d 306, 309–10 (Alaska App.1981).

The judgment is AFFIRMED.